CITY OF ATHENS, APPELLEE, *v.* BROMALL, APPELLANT.

[Cite as Athens v. Bromall, 20 Ohio App. 2d 140.]

(No. 653—Decided August 21, 1969.)

*Mr. Joe Gerig,* for appellee.
*Mr. William A. Lavelle,* for appellant.

GRAY, P. J. This cause is in this court on appeal from a judgment of the Municipal Court of Athens. Defendant was charged with a violation of an Athens city ordinance in that he did resist and obstruct a police officer who was then engaged in the duties of his office. He was tried to the court without the intervention of a jury and found guilty.

Defendant, feeling aggrieved by this result of his trial in the Muncipal Court, filed his notice of appeal and assigned the following errors:

1. The court below erred in finding the defendant herein guilty of a violation of Athens City Ordinance, Section 135.11, in that guilt was not established beyond a reasonable doubt and the verdict was contrary to the manifest weight of the evidence.

2. The court below erred in finding the defendant herein guilty of a violation of Athens City Ordinance, Section 135.11, in that the verdict was contrary to law.

These assignments of error require us to weigh the evidence.

On November 26, 1968, approximately 22 students of Ohio University were arrested for conducting and participating in a sit-in demonstration in the Security Police Office of Ohio University. After their arrest, these students were brought to the Athens City Hall where they were detained, booked, processed, and the ones who could make bail were released.

The record shows that the sit-ins were being processed by the police in council chambers because the police office was too small to hold all the arrested persons. The council chambers and the police office were located across the entrance hall from each other in city hall.

Policemen were stationed at two entrance doors to

council chambers. Defendant approached one of these officers who inquired if he could be of help. Defendant stated that he wanted to see some of the sit-ins. He was told that if he did not have any business where the sit-in students were being booked he was to stay out. Defendant nevertheless entered the chambers. The record shows that he acted in a manner which called attention to himself and that he would not co-operate with the police and was very belligerent in his attitude.

Defendant was asked if there was a definite person or persons he wished to see. Defendant gave no answer. Neither did he identify himself. The officers were handling bail money and, no doubt, wanted to know the identity of persons present.

Defendant was ordered from the council chambers on at least three occasions. Each time he returned. Finally he was escorted to the front door of city hall and to the sidewalk outside. He was told that if he returned he would be arrested for trespassing. He forced his way back in the building past a policeman stationed at the door. He was arrested on two charges: one, for trespassing; and two, for resisting and obstructing a police officer in the performance of his duties. The trespassing charge was dismissed by the trial court. The record shows that before defendant was finally arrested officers tried to reason with him and to urge and persuade him not to re-enter the building because he was interfering with the police.

The record shows that a dispatcher, a sergeant, and the captain of the Athens Police Department were all required to give attention to defendant when duties required them to be elsewhere.

It is the contention of defendant that, since he was not guilty of trespassing, he could not be guilty of resisting and obstructing a police officer in the performance of his duties. This is a *non sequitur*.

It was developed by the testimony that defendant was an assistant professor of government and that he taught courses in introduction to government, law enforcement and judicial process at Ohio University.

The point was made that defendant did not know that Captain Cochran was a police officer when he ordered defendant to leave the council chambers. Captain Cochran was dressed in civilian clothes at that time. In the presence of defendant this police official gave orders to other policemen, and the orders were being obeyed.

Sgt. Bateman was the officer who put him outside the building and told him that if he re-entered he would be arrested. He forced his way back into the building. No claim is made by defendant that Sgt. Bateman was not in uniform. He signed the two affidavits against defendant.

Section 135.11, Athens City Ordinance, in defining the person to whom the section relates does not say "officer in the execution of his office *knowing him to be such.*" If the Council of the city of Athens had meant such construction it would have been an easy matter to say it. However, it must be remembered that defendant, from his specialized knowledge of this area of human endeavor, must have realized that Capt. Cochran was a police official even though not in uniform. No claim is made by defendant that he did not know Sergeant Bateman to be a police officer. See *United States* v. *Lombardozzi* (C. C. A. 2), 335 F. 2d 414.

Defendant testified that he had been contacted by students concerning the sit-ins and that he had called at the police station to inquire what the charges were and what the amount of the bond was. He testified further that he had an American Automobile Association card which could be used for bonding for himself. The police informed him that his A. A. A. card was not acceptable for such purpose.

The record does not show that defendant attempted to secure proper bail for any of the sit-ins or that he attempted to secure the release of any certain individual or that he talked to any one of the sit-ins. No claim is made that defendant is an attorney who was entitled by law to represent any of the sit-ins or to visit or consult with them after arrest. The record does not show, other than by defendant's own testimony, that any of the arrested sit-ins requested his aid.

The courtroom, not the place where these arrests were made or the place where the sit-ins were taken for detention, booking and the taking of bail, is the proper place for testing the validity of the arrests. Nor was it a forum in which to register intelligent and informed dissent.

Defendant does not claim that he was related by blood to any of the arrested sit-ins, or that he knew any of them personally or that he had any special interest in any of them. There is no claim that the arrests were not proper, that those arrested were mistreated in any way, that they were not granted the right to bail, that they were illegally incarcerated, or that their civil rights were invaded in any way. The record shows that the Safety Director of the city of Athens was present, as were newspaper reporters and other persons. If any untoward conduct on the part of the police occurred, higher officials of the city of Athens were present, who could rectify the situation immediately and prevent its recurrence. No such actions on the part of the police are claimed to have occurred.

The purpose of the passage of this ordinance forbidding one from resisting and obstructing an officer is to permit the officer to execute his office and duties without hinderence and to allow police actions to proceed calmly, efficiently and without difficulty.

It is our opinion that there was such interference by defendant as to amount to resisting and obstructing the officers and the affiant in particular in the performance of the duties of his office. In fact we find it difficult to determine the exact reason why defendant was there.

We are of the further opinion that the right of interference in aid of another is limited to a lawful resistance by the person arrested; and the right of a person to defend another does not ordinarily exceed such person's right to defend himself.

There rests on all persons the duty to do nothing which might interfere with policemen as they go about their duties of protecting the public.

Two affidavits were filed against defendant: one, for committing the offense of trespass, the other, for resist-

ing and obstructing a police officer who was engaged in the enforcement of Athens City Ordinance, Section 135.11.

The affidavit filed against defendant for trespassing was dismissed by the trial judge. It is contended by defendant that it is not possible to commit a trespass against public property, *i. e.*, the city building containing council chambers, police offices, the offices of the auditor, treasurer, mayor and the city income tax department.

In this we believe defendant and all who entered into this affair with him entertain erroneous beliefs.

Section 2909.21, Revised Code, states:

"No person shall enter without lawful authority upon the land or premises of *another*, or being upon the land or premises of *another*, upon being notified to depart therefrom by the owner or occupant, or the agent or servant of either, without lawful authority neglect or refuse to depart therefrom.

"Whoever violates this section shall be fined not more than fifty dollars or imprisoned not more than thirty days, or both." (Emphasis added.)

We believe that the word, "another," includes the city of Athens. This same question was litigated through the highest court of Massachusetts and to the United States Supreme Court which latter court refused to certify the case. By such action the decision of the Supreme Judicial Court of Massachusetts in the case of *Commonwealth* v. *Egleson*, —Mass.—, 244 N. E. 589, was permitted to stand.

As far as we have been able to ascertain, this question has never been decided in Ohio. Defendant assumed the correctness of his position and has not cited any authority to substantiate it.

The statute contains no exceptions, and we see no reason to believe that the Legislature intended any.

If defendant could enter the city building under the circumstances portrayed in the record, then 600 other university professors could do the same. Carrying defendant's contention to a logical conclusion, 17,000 students and 13,000 citizens of Athens had the same right as defendant claims for himself. Nothing but chaos and the break down of law

and order could result from this state of affairs. The city had both a right and a duty to protect the building and its functions against any self-proclaimed need for an individual entry which could not, so far as it appears, benefit the public use in any respect. "The state, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley* v. *Florida*, 385 U. S. 39, 47, 17 L. Ed. 2d 149, 87 S. Ct. 242. "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy." *Cox* v. *Louisiana*, 379 U. S. 536, 554, 13 L. Ed. 2d 471, 85 S. Ct. 453; *Cameron* v. *Johnson*, 390 U. S. 611, 616, 617, 20 L. Ed. 2d 182, 88 S. Ct. 1335; *Amalgamated Food Employees Union Local 590* v. *Logan Valley Plaza, Inc.*, 391 U. S. 308, 320, 20 L. Ed. 2d 603, 88 S. Ct. 1601.

The court, in *United States* v. *McDonald* (1879), 26 F. Cas. 1074, at 1077, construed a statute containing the descriptive words, "Obstructs, resists, or opposes." The court said:

"* * * The statute, however, does not limit the offense to resistance alone, it includes also willful acts of obstruction or opposition; and to obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means. It includes any passive, indirect or circuitous impediments to the service or execution of process; * * *"

The facts appearing in a very late case decided by the court of last resort in the state of New York, *People* v. *Williams*, 25 N. Y. 2d 86, 250 N. E. 2d 201, bear a striking similarity to those in the case under consideration.

Briefly the facts in the New York case are these. The police did not know that the original entry into the building was lawful, and it was reasonable for them to infer that

defendants had been unlawfully on the property *ab initio.* The court held that, therefore, arrest for unlawful intrusion was lawful under a statute permitting a peace officer to arrest without a warrant when he has reasonable grounds to believe that a crime is being committed in his presence, and the fact that defendants were acquitted on such charge would not defeat a charge of resisting a public officer in discharge of his duty growing out of the same occurrence.

At page 203 of 250 N. E. 2d the court said:

"* * * The appellants' refusal to act as directed was an obstruction to the police officers in the performance of their duty. Each of the appellants delayed his own arrest and necessarily the arrest of the others. Thus, notwithstanding the fact that appellants' resistance was passive, it nevertheless constituted resistance under section 1851 (*People* v. *Mortiney,* 43 Misc. 2d 94, 250 N. Y. S. 2d 28; *People* v. *Knight,* 35 Misc. 2d 216, 222, 228 N. Y. S. 2d 981, 987). To hold otherwise would necessarily inhibit the public officer in the performance of his duty—a duty, we might add, which has become increasingly more difficult to perform each passing day."

For the reasons contained herein, we are of the opinion that the assignments of error filed in this case are not well taken. We believe the record amply sustains the judgment of the trial court. Therefore, the judgment of the court below is affirmed.

*Judgment affirmed.*

ABELE, J., concurs.

STEPHENSON, J., concurring. I concur in the judgment herein. I respectfully disagree, however, as to the reasons assigned by my colleagues in affirming. An important feature of the proceedings below, not disclosed in the majority opinion, is that, for convenience, trial was had on both charges jointly. At the conclusion of all the evidence, the appellant was found not guilty as to trespassing and guilty as to resisting and obstructing an officer.

From a reading of the majority opinion, my basic disagreement is that reliance in affirming is placed by the majority on the conduct of the appellant prior to the arrest for trespassing, which conduct constituted part of the evidence as it related to the events leading to the trespassing charge.

The affidavit charging "resisting" provided in part:

"* * * Irvin H. Bromall, Lakeview Manor, Athens, Ohio, did resist, hinder and obstruct a certain officer to-wit: Sergeant R. L. Bateman, a member of the Athens Police Department, who was engaged in the enforcement of an Athens City Ordinance, contrary to Athens City Ordinance, Sec. 135.11."

The complaining witness and the prosecutor were free to word the affidavit as they saw fit. They chose to word it that the offense occurred while an Athens City Ordinance was being enforced. It was this charge, in its totality, with the particularity as to when the offense occurred, on which the prosecution and defense submitted their case.

The first paragraph of the city's brief states:

"Appellee contends that the city of Athens proved beyond a reasonable doubt that appellant knowingly and wilfully resisted and obstructed Sgt. Ross Bateman while said Sgt. arrested appellant for trespassing."

The above negates the view, held by neither the police officer, the prosecutor nor defense counsel, but adopted by the majority herein, that the resisting violation occurred at the time of the booking of the student offenders in the city council room. To adopt that view, one must ignore, and, in effect, treat as surplusage, that portion of the "resisting" affidavit which states "who was engaged in the enforcement of an Athens City Ordinance." In essence, the majority view of when the violation occurred amends or re-writes the affidavit, which authority is not possessed by the trial court or this court. *Ironton* v. *Bundy*, 98 Ohio App. 416; *State* v. *Jennings*, 112 Ohio App. 455. It has been aptly noted in *Diebler* v. *State*, 43 Ohio App. 350:

"An affidavit is the act of an individual, for the signing of which such individual is and holds himself or herself out

to be responsible. No court or public officer has authority to force an individual to say something different from what that individual actually did say or express a willingness to say.''

I, therefore, confine my review herein to whether there was a violation, as charged, of the ''resisting and obstructing'' ordinance at the time of the arrest for trespassing.

There can be no question, in view of the record, that the appellant knew he had been ordered out of the building, that the officers did not want him to re-enter the building, and that he was being placed under arrest for trespassing.

The purpose of Section 135.11 is self evident. It is to require peaceful and orderly submission to lawful arrest and the avoidance of the use of force. When an officer makes a lawful arrest, it is the duty of the person arrested to submit peacefully.

The terms resist, obstruct or abuse as used in the ordinance and, also, the state statute, Section 2917.33, Revised Code, are not defined. The Ohio Supreme Court has stated, however, that it is not necessary, in order to constitute a violation, that the officer be assaulted, beaten or bruised. *Woodworth* v. *State*, 26 Ohio St. 196. The Supreme Court of Illinois, in *People* v. *Raby*, 40 Ill. 2d 392, 240 N. E. 2d 595, approved the interpretation that ''resisting'' means withstanding the force or effect of or the exertion of oneself to counteract or defeat. Obstruct means to be or come in the way of. The court stated that the terms are alike in that they imply some physical act or exertion. The court further states, at page 599 of 240 N. E. 2d:

'' '* * * Given a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest.' ''

See, also, *People* v. *Martinez*, 43 Misc. 2d 94, 250 N. Y. S. 2d 28, wherein defendants were convicted of resist-

ing a public officer in the discharge of his duty by having to be carried to an elevator after arrest.

In the case at bar, there is evidence, which the trial judge could accept, if believed, that the appellant, when being placed under arrest, began backing away from the officer, that the officer took hold of appellant's arm, pulled him back and pushed him up the hallway, that the appellant was holding his feet out in front of him trying to brace himself, and that the arresting officer had to push him along. The force here involved was small, but it was force nevertheless, and it was required by appellant's actions.

Appellant argues that the officer was without authority to effect a misdemeanor arrest, inasmuch as the trial court dismissed the trespassing charge, and that appellant could lawfully resist the illegal arrest. The latter proposition finds support in *Columbus* v. *Holmes*, 107 Ohio App. 391. I do not believe, however, that case may be used for a rule that a mere acquittal of a criminal charge makes the prior arrest or the charge illegal. Different considerations are involved. The arrest here was not, in my opinion, illegal. The police officers, including the Safety Director of the city of Athens, were in the process of booking twenty to twenty-five prisoners. The police quarters were inadequate, and the council chambers were being used for this purpose. The adjoining hallway leading to the outside was crowded. On three different occasions the appellant entered the council chambers and was, each time, ordered to leave. I am not prepared to hold that under these circumstances the authorities could not lawfully order him from the city building, at least while the processing of prisoners continued. The validity of the order was not reached in the trial court because of the wording of the affidavit and the resulting variance.

Unlike my colleagues who find the record ample to sustain the conviction, I find the questions presented to be close ones, especially on the weight of the evidence. Upon a consideration of all the evidence. however, I concur in the affirmance of the judgment.