THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* SAVREN, APPELLANT.

(Nos. 9557 and 9558—Decided December 23, 1969.)

*Mr. John C. Young,* city attorney, *Mr. Thomas S. Erlenbach* and *Mr. Vincent DePascale,* for appellee.
*Messrs. Campbell & Boyland,* for appellants.

HOLMES, J. These appeals are from judgments of the Municipal Court of Franklin County finding the defendants guilty of violating Section 3761.11, Revised Code, relating to the disturbance of a lawful assemblage.

The incident out of which the charges grew took place on June 7, 1969, on the occasion of the spring commencement exercises of The Ohio State University, which exer-

cises were being conducted at The Ohio State University Stadium.

The Vice President of the United States, Mr. Spiro T. Agnew, was the principal speaker for the graduation ceremonies, and the defendants were among those spectators in attendance.

From the testimony at the trial of these defendants, it was developed that at various times during the Vice President's speech, the defendants would stand on the stadium seats and applaud, yell, make noises, and extend their arms and make the well-known "V" sign with their fingers, which sign has come to be known as a peace or victory sign, depending upon who might be making the sign.

Nothing would appear to be unusually disruptive in such behavior except for the fact that such yelling, shouting, and applause came at times when others in the assembled crowd were silent, attentive, and endeavoring to listen to the presentation of the Vice President.

The defendants were approached by on duty State Highway Patrolmen who, after some expression of differences with the defendants, proceeded to escort the latter from the stadium to a point where they would not be offended by the sounds emenating from the Vice President.

The defendants were charged with, and after the trial found guilty of, violating Section 3761.11, Revised Code.

The defendants, appellants herein, cite two assignments of error:

"1. Ohio Revised Code Section 3761.11 is violative of the due process requirement of the Fourteenth Amendment to the United States Constitution.

"2. Prosecution under Ohio Revised Code Section 3761.11, as applied to the defendants herein constitutes an unconstitutional restriction of their right to freedom of expression."

Upon a review of all the facts of the case, we are not disposed to agree with such assignments of error.

The section of the Code involved in this matter, and pursuant to which these defendants were charged, is Section 3761.11, Revised Code, which is as follows:

"No person shall willfully interrupt or disturb a lawful assemblage of persons or a person while he is at or

about the place where such assemblage is to be held, or is or has been held."

The defendants first contend that such section is so vague in its terms as to be in conflict with the constitutional principle of due process. With this we cannot agree.

However true it might be, as urged by the defendants, that a criminal statute must not be phrased so that one who is charged thereby must have to guess, or be in doubt, as to the meaning and intent of such statute, such are not the facts to be found in the instant case.

The statute here under consideration is explicit in its prohibition. The terms as set forth in the statute are those of common usage and understanding, and we may assume that the Legislature gave such terms their ordinary meaning as applicable to the prohibited activity.

The definition of "interrupt" as found in Webster's Unabridged Dictionary is, in part:

"To stop by breaking in: halt, hinder, or interfere with the continuation of (some activity): prevent (one) from proceeding by intrusive or interpolated comment or action."

The definition of "disturb" as found in Webster's Unabridged Dictionary is in part:

"To turn or distract (a person) by disturbance; to interfere with in the lawful enjoyment of a right: to break into the preoccupations of or command the attention of esp. annoyingly or disquietingly: to disquet."

The definition and meanings of these words certainly are of common understanding, and the other words of such Code section are used frequently by the general public, as undoubtedly by these defendants, in the common discourse of everyday life.

The defendants urge that such section of the Code lacks guidelines and does not provide any ascertainable standard of conduct from which one can determine the limits of acceptable behavior.

Such an argument utterly casts aside the basic guidelines of appropriate and acceptable behavioral patterns as established by society at large for like or similar gatherings.

What is, or is not, acceptable behavior in situations

such as this public gathering honoring a graduating class is commonly known, and commonly adhered to, by the average, or normal, responsible, and reasonably law abiding citizens of the community.

By claiming confusion as to the meaning of words in common usage, and by claiming such confusion restricts or limits their constitutional right of due process, the defendants would have the laws, or their interpretation, favor the abnormal rather than the normal behavior. This we are not mandated to do either by the Constitution or by the Supreme Court of the United States.

The first case as cited by the defendants, ostensibly supportive of their thesis of statutory vagueness, is *Connally* v. *General Const. Co.*, 269 U. S. 385, 70 L. Ed. 322, 46 S. Ct. 126. We take no specific exception to *Connally* other than to state that it is not applicable to the facts in this case. In *Connally* the court struck down certain statutory language as being vague and uncertain, which language attempted to establish minimum wages for certain employees in the state of Oklahoma. A review of such language of the statute from *Connally* provides no simile for the consideration of this court.

The defendants cite the case of *Stromberg* v. *California*, 283 U. S. 359, 75 L. Ed. 1117, 51 S. Ct. 532, 73 A. L. R. 1484, in support of the proposition that, where the statute in question operates to limit the exercise of constitutional guaranteed freedoms, its provisions must be all the more carefully scrutinized. In the *Stromberg case*, the Supreme Court held as unconstitutionally indefinite and ambiguous a California statute which prohibited the display of a red flag as an "emblem of opposition to organized government * * * ."

The court in *Stromberg* felt that the prohibition of the display of a red flag, as an expression of dissent, would be repugnant to the continued right of free political discussion and expression.

The court, through Mr. Chief Justice Hughes, in *Stromberg* used the following significant language which we readily endorse:

"* * * The maintenance of the opportunity for free

political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system. * * *"

This opportunity for free political discussion should encompass the freedom of "pure speech" as well as freedom of other activities constituting expression. Such freedom could well envision the hanging of a red flag, or for that matter, a turquoise flag, and could well encompass the wearing of a sign or badge, or involve gestures including the making of the "V" sign, as present in this case.

This being so, we can favorably accept an argument that a statute absolutely prohibiting the display of a red flag as an "emblem of opposition to organized government * * *" could well be repugnant on the basis of its indefiniteness or vagueness.

In like manner, a statute absolutely prohibiting the making of the "V" sign with the fingers, as denoting peace or victory, or whatever, could not reasonably be constitutionally upheld as to its definiteness.

However, we are not confronted with that type of statute in the instant case. Section 3761.11, Revised Code, prohibits specific activity by specific common language which may be applied with commonly accepted standards.

Standards of acceptable behavior are generally known, or can readily be determined, for most gatherings or assemblies from the general and average conduct and standards of those attending such type of assemblage.

Standing on a stadium seat at a graduation ceremony and shouting remarks at the Vice President of the United States, with whom you may disagree, is quite a different thing from standing on that same seat at a football game and informing the referee that you take exception to his last penalty call.

The language of the statute prohibits the interruption or disturbance of lawful assemblage. We feel that there was ample evidence adduced to show beyond a reasonable doubt that the actions of the defendants in yelling, shouting, and clapping, while others in the stadium were

attempting to listen to the presentation, were willfully done to interrupt or disturb such lawful assemblage and the presentation they came to hear.

The defendants' second assignment of error is based upon the general claim that the statute involved herein, *i. e.,* Section 3761.11, Revised Code, and the convictions of the defendants thereunder constitute an unconstitutional restriction of their rights to freedom of expression under the First Amendment to the Constitution of the United States, and Section 3, Article I, and Section 11, Article I of the Constitution of the state of Ohio.

We are also unable to agree with that assignment of error.

As stated previously, Section 3761.11, Revised Code, prohibits acts or conduct by persons, which acts or conduct would willfully interrupt or disturb a lawful assemblage. Such section does not prohibit or interfere with any basic rights of freedom of expression as granted by the Constitution.

At such lawful assemblage one may speak with those sitting about him, conceivably without violating such section. Also, it is possible that certain gestures, including the hand gesture indicating peace, could be made by those in attendance without their being chargeable with "willfully interrupt[ing] or disturb[ing]" such assemblage. Obviously, any of those in attendance have the right to remain silent and, by doing so, express their displeasure or dissent with what is being said.

However, as in this instance, where the evidence adduced shows that the defendants persisted in a course of conduct consisting of applauding, yelling, standing on their seats, and making arm and finger gestures, such action could well be considered as violative of the rights of the other persons so legally assembled.

This court shall always uphold the basic right of freedom of expression as guaranteed both by the United States Constitution and the Ohio Constitution, but in doing so the rights of others shall also be protected.

Section 11, Article I of the Constitution of the state of Ohio provides that "Every citizen may freely speak, write,

and publish his sentiments on all subjects, being responsible for the abuse of the right; * * *"

That means that one may exercise such constitutional right of freedom of expression within the reach or limitation of not interfering with the same constitutionally guaranteed rights of others.

Expression and communication of thoughts or ideas necessarily entails both of the elements of transmission and reception. Both processes may be interfered with, or denied, to the disturbance or prejudice of the transmitter as well as the transmittee. All persons should be afforded the reasonable right to hear, as well as be heard. The interpretation of the constitutional provisions involved herein should be such that people attending a lawful assemblage will be given the consideration and opportunity to engage in the communication of ideas, by way of listening to such ideas, without undue interference by others in the exercise of such right.

As aptly put by the state in its brief: "* * * what we are really concerned with here, is not whether the defendants have the right to free speech, because they do, but whether they have the right to usurp the prior existing right of free speech of others to exercise it. They do not!"

We can endorse whole-heartedly the statement of the court in *Cox* v. *Louisiana,* 379 U. S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453, and followed in *Athens* v. *Bromall,* 20 Ohio App. 2d 140:

"4. The rights of free speech and assembly, while fundamental in our democratic society, do not mean that any one with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. * * *"

It would seem to be fundamental that while the right of freedom of expression may have neared the realm of the absolute, the exercise of such right must necessarily be limited by the circumstances, and the right of freedom of expression and communication, as enjoyed by others.

In support of the proposition that they have been

denied their constitutional guarantees of free speech, the defendants cite the cases of *Terminiello* v. *Chicago*, 337 U. S. 1, 93 L. Ed. 1131, 69 S. Ct. 894; and *Tinker* v. *Des Moines Independent Community School District* (1969), 393 U. S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733.

We feel that such cases are not totally determinative of the instant case. In *Terminiello* the court reversed a conviction for disorderly conduct, where such conviction was based on an ordinance of the city of Chicago providing that "All persons who shall make, aid, countenance, or assist in making any improper noise * * * or diversion tending to a breach of the peace * * * shall be deemed guilty of disorderly conduct * * *." Section 1 (1), ch. 193, Rev. Code 1939, City of Chicago.

The five-to-four majority decision rendered by Mr. Justice Douglas relied heavily upon the fact that the trial court had charged that a " 'breach of the peace' consists of any 'misbehavior which violates the public peace and decorum'; and that the 'misbehavior may constitute a breach of the peace if it stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance, * * *.' "

The Supreme Court decided that such ordinance, as construed in the charge to the jury, was violative of the First and Fourteenth Amendments to the Constitution of the United States as being a stifling or censorship of free speech.

The ordinance as reviewed in the *Terminiello case* was construed as it related to Terminiello who was the person who had delivered the incendiary speech which allegedly breached the peace. The one in such case claiming that his rights of free speech had been denied was the main speaker of the affair, not one of the audience who may have been prevented from shouting down the speaker. Further, under the facts of *Terminiello*, such meeting being of an extremely controversial political nature, it is doubtful whether the ordinance would have been any more valid in its application to a member of that particular audience.

But, in any event, the statute here involved is one prohibiting the disturbance or interruption of the exercise by

others of the rights of legal assemblage, which would include the freedom of expression. Such statute in no manner is denying these defendants the right to exercise their freedom of speech, to invite dispute, or to express dissatisfaction with conditions as they are. The defendants most certainly may express any political idealogies or philosophies to which they might subscribe, but they must do so in a manner that is not violative of the rights of others.

In like manner, the case of *Tinker,* cited by defendants, is not dispositive of the instant case, for the reason that the regulatory prohibition frowned upon by the Supreme Court in such case involved a silent or passive expression of dissent. Before the court was the regulation promulgated by the Des Moines school officials, which prohibited the wearing of black armbands as an expression of dissatis- faction with the United States government's policy in Vietnam.

Generally, the holding of the court in *Tinker* is to the effect that the wearing of armbands for the purpose of expressing certain views is the type of symbolic act that is within the free speech clause of the First Amendment to the Constitution of the United States.

*Tinker* further holds that a student's right to express opinions extends to controversial subjects such as the conflict in Vietnam, and that such right should not be confined to only those sentiments or statements which are officially approved by a school district.

However, in our view, *Tinker* does not condone, or render inviolative, an unbridled exercise of the right of expression by word or action, particularly where such exercise would collide with the rights of others. As stated by Mr. Justice Fortes in the majority opinion:

"* * * But conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guaranty of freedom of speech Cf. *Blackwell* v. *Issaquena County Board of Education,* 363 F. 2d 749 (C. A. 5th Cir., 1966)."

In the instant case we are not confronted with a statute denying the defendants the opportunity to wear armbands, or carry signs, or wear badges—or to make a sign of peace with their hands. Instead, what is under consideration here is a statute regulating activities, including speech-connected activities, which in their exercise would disrupt or interfere with lawful assemblage and the exercise of a like freedom of expression by others.

The First Amendment to the Constitution of the United States should provide no immunization from a statute that by its very nature seeks only to provide for the peace and order of a lawful gathering and to protect the rights of those assembled.

We do not, as admonished by Mr. Justice Fortes, "* * * confine the permissible exercise of First Amendment rights to a telephone booth * * *"—but yet we cannot extend such exercise to Ohio Stadium where such extension would materially collide with the exercise of like rights by others.

The federal Constitution should provide no means for a collision course to be charted among the citizens, all of whose rights it was dedicated to protect.

The defendants have quoted the following passage from Henry David Thoreau in *Walden*:

" 'If a man does not keep pace with his companions perhaps it is because he hears a different drummer. Let him step to the music which he hears, however measured or far away.' "

With a prayer that we may be extended poetic license, and with the hope that we will not arouse artistic wrath, we offer the following amendment by way of inclusion:

"However extensive may be the right of a man, 'to step to the music which he hears,'

"There exists no co-extensive right to disturb, by beating his drum in his companions' ears."

The judgments of the Municipal Court of Franklin County are, hereby, affirmed.

*Judgments affirmed.*

TROOP, P. J., and STRAUSBAUGH, J., concur.