Honorable Barry L. Macha Criminal District Attorney Wichita County Courthouse Wichita Falls, Texas 76301
Re: Authority of a general law city to enact ordinances affecting city-owned property outside the city's corporate limits and extraterritorial jurisdiction
Dear Mr. Macha:
You inform us that a general law city located in Wichita County, Texas, owns certain real property which is located outside the corporate limits of the municipality. The property is not adjacent to or contiguous with either the corporate limits of the city or the area comprising its extraterritorial jurisdiction. The city wishes to protect the property by enforcing city ordinances which prohibit trespassing, littering, vandalism, and discharging weapons. The city wishes to protect itself from civil liability by enforcing safety ordinances. It also hopes to bring the property into compliance with regulations of the Texas Department of Health and the Texas Department of Water Resources.
The situation has prompted the following questions:
 1. If a general law city owns real property which is noncontiguous with and located outside of the corporate limits and extraterritorial jurisdiction of the city, can that city govern such property through the enforcement of city ordinances?
 2. If so, what court has proper jurisdiction over proceedings resulting from the violation of such ordinances?
 3. [I]f the city cannot govern such property through its ordinance power, can the city protect its property in a manner consistent with that of a private landowner?
It is axiomatic that all powers granted to a city may be exercised only within the corporate limits of the city unless expressly extended by statute to apply outside the corporate limits. City of West Lake Hills v. Westwood Legal Defense Fund,598 S.W.2d 681, 686 (Tex.Civ.App.-Waco 1980, no writ); City of Sweetwater v. Hamner, 259 S.W. 191 (Tex.Civ.App.-Fort Worth 1923, writ dism'd). Thus, municipal ordinances are held to have no extraterritorial effect unless specifically provided by statute. E.g., Shows v. City of Dallas, 172 S.W. 1137, 1138
(Tex.Civ.App.-Dallas 1915), aff'd 212 S.W. 633 (Tex.Comm'n App. 1919, holding approved).
Sections 51.001, 51.012, and 51.032 of the recently enacted Local Government Code (effective September 1, 1987), Acts 1987, 70th Leg., ch. 149, § 1, at 1511-1513, grant the governing bodies of general law municipalities authority to enact ordinances, not inconsistent with state law, that are necessary to carry out powers granted by law to the municipalities and to properly govern the municipality. None of these provisions confer extraterritorial ordinance-making authority on general law municipalities. Compare Local Gov't Code §§ 42.001 (purpose of designating extraterritorial jurisdiction is to promote and protect general health, safety, and welfare of persons residing in and adjacent to municipalities); 42.021 (extent of extraterritorial jurisdiction limited). The statutes from which the enumerated Local Government Code provisions are derived also did not grant extraterritorial effect to city ordinances. See V.T.C.S. arts. 962, 968, 1011, 1145 (repealed by Acts 1987, 70th Leg., ch. 149, § 49, at 2543-44). Sections 51.015
and 51.018 of the Local Government Code authorize "Type A" general law cities[1] to hold, purchase, lease, or convey property located in or outside the city. Section 51.034 authorizes "Type B" general law cities[2] to hold and dispose of real property located within their municipal boundaries. "Type C" general law municipalities[3] may, depending upon population, possess the same authority to acquire and convey real property as "Type A" or "Type B" general law cities. Local Gov't Code § 51.051
(a), (b). None of these provisions empowers a general law city to protect property outside its corporate limits or extraterritorial jurisdiction by the enforcement of its own ordinances. Cf. Local Gov't Code §§43.023(g), 43.024(d), 43.025(c), 43.028(e) (inhabitants of territory annexed by a municipality are bound by ordinances of the municipality). Accordingly, your first question is answered in the negative. This answer dispenses with the need to consider your second question.
Your final question is whether a general law city may protect its property in a manner consistent with that of a private landowner. The general rule regarding the authority of a municipal corporation to protect property under its control was stated in Adderley v. Florida, 385 U.S. 39, 47 (1966):
 The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.
See also City of Athens v. Bromall, 252 N.E.2d 298 (Oh.App. 1969); 10 McQuillin, The Law of Municipal Corporations § 28.23a (3rd ed. 1981). You do not indicate the use for which the property owned by the city is dedicated. We have been informed, however, that the city intends to develop the property for use as a public park. A municipality may acquire and improve land located outside its boundaries but within the county in which the city is situated to be used for public parks. Local Gov't Code §331.001(a), (b)(1), (c). Parks acquired pursuant to chapter 331 of the Local Government Code are "under the control and management of the municipality or county acquiring the park." Id. § 331.005(a). Furthermore, parks acquired and maintained pursuant to chapter 331 "shall be open for the use of the public under rules prescribed by the governing body of the park." Id. § 331.007. Accordingly, although a city may not enforce its ordinances on the property in question, it may manage and control the land it intends to develop as a public park and prescribe rules regulating the use of the park by the public.
 SUMMARY
A general law city may not enforce city ordinances on land it owns outside the corporate limits or extraterritorial jurisdiction of the city. A municipality, no less than a private owner of property, may protect and preserve property under its control for the use to which it is lawfully dedicated. A park acquired pursuant to chapter 331 of the Local Government Code is under the management and control of the municipality acquiring the park. Local Gov't Code § 331.005(a). The governing body of the park may prescribe rules regulating its use by the public. Local Gov't Code § 331.007.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller Executive Assistant Attorney General
 Judge Zollie Steakly Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Rick Gilpin Assistant Attorney General
[1] A "Type A" general law municipality is one which has either (a) incorporated under subchapter A of chapter 6 of the Local Government Code, (b) converted to a "Type A" general law city under subchapter B of chapter 6, or (c) operated under chapters 1-10 of title 28 of the civil statutes immediately preceding September 1, 1987, and has not changed its "Type A" status. Local Gov't Code § 5.001.
[2] A "Type B" general law municipality is one which has not changed its "Type B" status and has either incorporated under chapter 7 of the Local Government Code or operated under chapter 11 of title 28 of the civil statutes immediately preceding September 1, 1987. Local Gov't Code § 5.002.
[3] A "Type C" general law municipality is one which has not changed its "Type C" status and has either (a) incorporated under subchapter A of chapter 8 of the Local Government Code, (b) converted to "Type C" status under subchapter B of chapter 8, or (c) operated under chapter 12 of title 28 of the civil statutes immediately preceding September 1, 1987. Local Gov't Code §5.003.