OPINION.
Raising three assignments of error, defendant-appellant George Burnett appeals the trial court's judgment convicting him of criminal trespass in violation of R.C. 2911.21.
I. FACTS AND PROCEEDINGS
On February 7, 1998, Burnett was arrested for a drug-related offense in Over-the-Rhine, an area of the city of Cincinnati that had been designated by ordinance as a "Drug-Exclusion Zone."[1] As a result the arrest, Burnett was issued a "Notice of Exclusion" that prohibited him from entering Over-the-Rhine for ninety days. The notice also provided that Burnett would be subject to arrest for criminal trespass if he was found within Over-the-Rhine within the specified ninety-day period.
On February 25, 1998, following his conviction for the drug offense, Burnett was issued a second Notice of Exclusion pursuant to Cincinnati Municipal Code Chapter 755. This notice prohibited Burnett from entering Over-the-Rhine for one year and provided that violation of the exclusion order would subject him to prosecution for criminal trespass.
Thereafter, on June 23, 1998, while Burnett's one-year exclusion remained in effect, police observed him in Over-the-Rhine. As a result, he was arrested and charged with criminal trespass. After the trial court overruled Burnett's motion to dismiss the charge, the case was tried to the bench; Burnett was found guilty as charged. This appeal, in which Burnett raises three assignments of error, followed.
 II. ASSIGNMENTS OF ERROR A. CONSTITUTIONAL CHALLENGES
In his second assignment of error, Burnett asserts that the trial court erred in failing to grant his pretrial motion to dismiss the trespass charge, given that the charge was dependent upon his violation of the one-year exclusion notice that was issued pursuant to Cincinnati Municipal Code Chapter 755, an enactment that he contends is unconstitutional.
If Burnett is correct in his assertion that Cincinnati Municipal Code Chapter 755 is unconstitutional, it follows that the Notice of Exclusion issued to him was of no force. And if the exclusion notice was of no effect, Burnett possessed every right to be present in Over-the-Rhine, and no basis for the trespass charge existed. Accordingly, we must examine Burnett's several challenges to the constitutionality of Cincinnati Municipal Code Chapter 755 to determine whether the trial court erred in denying his pretrial motion to dismiss the trespass charge. Before we turn to this examination, we provide a brief history of the law.
In September 1996, in an effort to curb the concentration of drug-related activity associated with specific areas of Cincinnati, the city council modified the Cincinnati Municipal Code by ordaining Chapter 755, entitled "Drug-Exclusion Zones."[2] Chapter 755 permits the council to designate specific areas within the city as drug-exclusion zones based on the higher incidence of drug-related crimes in those areas.[3]
To date, the only designated drug-exclusion zone is Over-the-Rhine.[4] Pursuant to this designation, a person arrested within Over-the-Rhine for drug abuse, or any drug-abuse-related activity, is subject to exclusion from the public streets, sidewalks, and other public ways within Over-the-Rhine for a period of ninety days.[5] And where that person is later convicted of the drug offense, he or she is then subject to a second exclusion, which continues for a period of one year.[6] Furthermore, if an excluded person is found in Over-the-Rhine during one of these two exclusion periods, that person is subject to immediate arrest for criminal trespass pursuant to R.C. 2911.21.[7] In addition, Chapter 755 sets forth procedures for the issuance of notices of exclusion, for appealing from the issuance of such notices, and for obtaining variances from the exclusions.
For purposes of clarity, we note that although Chapter 755 contains two distinct exclusion provisions, one applying to individuals arrested in Over-the-Rhine for drug crimes and another applying to individuals convicted of drug crimes, the facts of the instant case implicate only the latter provision, as it was the one-year exclusion that triggered Burnett's arrest for trespass. Accordingly, our holding today is limited solely to a determination of the constitutionality of Chapter 755's one-year exclusion provision for convictions. We make no pronouncement regarding the constitutionality of the ninety-day exclusion for arrests. That issue will be addressed when it is properly before this court.
1. RIGHT OF PEACEABLE ASSEMBLY
Burnett contends that the facial overbreadth of Chapter 755 violates the right of peaceable assembly guaranteed by theFirst Amendment to the United States Constitution and by Section 3, Article I of the Ohio Constitution.[8] Presumably, this challenge contemplates instances wherein an individual wishing to exercise his or her right to assemble peaceably for expressive purposes in Over-the-Rhine is prevented from doing so by virtue of an exclusion order issued pursuant to Chapter 755.
In the context of the First Amendment, the United States Supreme Court has altered its traditional rules of standing to permit attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.[9] Litigants, therefore, may challenge a law not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the law's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.[10] While the Supreme Court has entertained facial-overbreadth challenges in cases involving statutes that, "by their terms," sought to regulate "spoken words," and in cases where statutes, "by their terms, purport[ed] to regulate the time, place, and manner of expressive or communicative conduct,"[11] it has cautioned that application of the overbreadth doctrine to void a law is "strong medicine" that should be employed "sparingly and only as a last resort."[12] Accordingly, the Court has held that "particularly where conduct and not merely speech is involved, * * * the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."[13]
Chapter 755, by its own terms, does not target speech or expressive conduct; rather, it is a regulation of general conduct. As previously acknowledged, though, there are conceivable instances where the ordinance could affect expressive conduct such as the right of peaceable assembly. Judged in relation to the ordinance's predominantly legitimate application to nonexpressive conduct, however, these instances of encroachment are not substantial and, therefore, do not serve to justify invalidating the entire ordinance. Accordingly, we reject Burnett's overbreadth challenge.
2. RIGHT TO INTRASTATE TRAVEL
Burnett next asserts that Chapter 755 infringes on his fundamental right to travel in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and in violation of Section 1, Article I of the Ohio Constitution. In response, the state correctly notes that Chapter 755 implicates only intrastate travel, which, unlikeinterstate travel,[14] has never been officially recognized by the United States Supreme Court as a constitutionally guaranteed fundamental right. These facts would not necessarily end the inquiry, however, as many of the federal circuit courts have
addressed the question — some holding that intrastate travel is a fundamental right[15] and others holding that it is not.[16] But, given the circumstances of this case, we need not determine whether intrastate travel is a fundamental right because, under either the rational-basis scrutiny appropriate in evaluating impingements on nonfundamental rights or the heightened scrutiny appropriate in evaluating impingements on fundamental rights of this type,[17] Chapter 755's one-year exclusion passes constitutional muster. The city's interest in curbing drug-related activity is significant. And the one-year exclusion from Over-the-Rhine is not only rationally related to this interest, but is a narrowly tailored way of achieving the interest. It is limited not only in duration, but also in geographic scope to an area of the city demonstrated to have a significantly higher incidence of drug-abuse-related crimes than other similarly situated or sized areas of the city, and is triggered only when an individual is convicted of a drug-abuse-related crime committed within that specific area.[18] Moreover, the ordinance permits variances from the exclusion to be granted for reasons such as residence or employment in Over-the-Rhine, or for drug-abuse-related counseling services.[19] Accordingly, we reject Burnett's claims that Chapter 755 violates his right to intrastate travel under the United States and Ohio Constitutions.
3. USURPATION OF STATE LEGISLATIVE AUTHORITY
In his final constitutional challenge, Burnett contends that, in enacting Chapter 755, the city has impermissibly usurped the state legislature's authority, as conferred by Article II of the Ohio Constitution, to determine the range of penalties for individuals convicted of crimes. We disagree.
In State v. James,[20] the Oregon Court of Appeals reviewed the very drug-exclusion ordinance upon which Chapter 755 is modeled[21] in the context of a double-jeopardy challenge and determined that the ordinance's exclusion provision did not constitute a criminal penalty but, rather, was a civil sanction.[22] We find the reasoning set forth by the Oregon Court of Appeals to be persuasive. We, therefore, reject Burnett's argument insofar as it is dependent upon a characterization of Chapter 755's exclusion as a criminal penalty.
Accordingly, we conclude that the trial court properly overruled Burnett's pretrial motion to dismiss the trespass charge. We, therefore, overrule the second assignment of error.
B. CRIM.R. 29 MOTIONS FOR ACQUITTAL
In his first and third assignments of error, Burnett asserts that the trial court erred in overruling his Crim.R. 29 motion for acquittal made both at the end of the state's case and at the conclusion of all the evidence. He offers two arguments in support of these assignments.
First, he contends that the trial court erred in allowing the state to amend its complaint before ruling on the motion for acquittal made at the end of the state's case. Burnett notes that the state's initial complaint for criminal trespass incorrectly identified the officer who had issued the one-year Notice of Exclusion as the officer who, in fact, had issued the ninety-day exclusion. Given this error, and the fact that the ninety-day exclusion had expired before the date of Burnett's arrest for criminal trespass, Burnett contends that the state's evidence in support of the trespass charge was insufficient as a matter of law to establish that, at the time of his arrest, he was not privileged to enter Over-the-Rhine. For this reason, Burnett argues, the trial court should have granted his Crim.R. 29 motion for acquittal. Instead, he argues, the trial court improperly considered and granted the state's motion to amend its complaint to identify the correct officer who had issued the second notice of exclusion, which was in force at the time of Burnett's arrest. The trial court then denied Burnett's motion. Burnett contends that, so long as his motion for acquittal was pending, the trial court lacked the authority to entertain the state's motion to amend the complaint. We disagree.
Burnett correctly notes that Crim.R. 29(A) prohibits a court from reserving its ruling on a motion for a judgment of acquittal made at the end of the state's case. We are not of the opinion, however, that the trial court's consideration of the state's motion to amend its complaint amounted to the type of "reservation of ruling" contemplated by Crim.R. 29(A). Rather, we believe that Crim.R. 29(A)'s prohibition against reserving rulings is intended to guard against a trial court's failure to rule on the issue of acquittal before the defendant is called upon to present his or her own case.[23] Here, the trial court, after considering the two motions, granted the state's motion and rejected Burnett's. Burnett was not called upon to present his case until after the trial court had announced its denial of the motion for acquittal. Accordingly, we conclude that the trial court committed no error in entertaining the state's motion.
Furthermore, we conclude that the trial court did not err in granting the state's motion to amend the complaint. The proposed amendment sought only to cure the variation between the complaint and the proof offered at trial by correcting the name of the officer who had issued Burnett's one-year notice of exclusion. The amendment altered neither the name nor the identity of the crime charged.[24] Moreover, given that the state provided Burnett with the documents containing the correct information during pre-trial discovery, and that the state relied on these documents during both the pretrial motion to dismiss and the actual trial of the case, Burnett was neither misled nor prejudiced by the error in the initial complaint.[25]
Finally, we conclude that the trial court properly rejected the motion for acquittal made by Burnett at the end of the state's case. The documentary and testimonial evidence presented by the state demonstrated that on February 25, 1998, he was given notice, pursuant to Chapter 755, that he could not lawfully enter Over-the-Rhine for a period of one year, and that, nevertheless, on June 23, 1998, he was observed by police in that very area. Based on this evidence, the trial court could reasonably have found that Burnett had engaged in criminal trespass.[26]
Burnett also argues that the state's evidence of criminal trespass was insufficient as a matter of law because no evidence of his underlying drug conviction was offered at trial. Burnett appears to argue that, without evidence of this conviction, the state could not prove that he lacked privilege to enter Over-the-Rhine. We disagree.
Burnett was charged with a violation of R.C.2911.21(A)(3),[27] which requires proof of one's reckless entrance on the land or premises of another, when notice against unauthorized access or presence has been given by actual communication to the offender or in a manner prescribed by law. Contrary to Burnett's contention, proof of his "trespass" was not dependent upon the state's introduction of evidence of his drug conviction. Although that conviction did trigger his exclusion from Over-the-Rhine pursuant to Chapter 755, it was the actual Notice of Exclusion that operated under the criminal trespass statute to deny him the privilege to enter the area. Accordingly, we conclude that the state's evidence, which included the February 1998 Notice of Exclusion issued to Burnett, along with the foundational and authenticating testimony of the officer who had served that notice on Burnett, as well as the testimony of the police officer who arrested him in Over-the-Rhine for criminal trespass, was sufficient to provide the trial court with a basis for determining that Burnett was guilty of criminal trespass.[28]
Therefore, the court correctly overruled Burnett's Crim.R. 29 motions for acquittal.[29]
For these reasons, we overrule the first and third assignments of error.
C. CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court.
Judgment affirmed.
 Gorman, P.J., concurs and Painter, J.,
concurs separately.
[1] See Cincinnati Municipal Code 755-15.
[2] See Ordinance No. 229-1996, ordaining Cincinnati Municipal Code Chapter 755.
[3] See Cincinnati Municipal Code 755-1 and 755-3.
[4] See Cincinnati Municipal Code 755-15.
[5] See Cincinnati Municipal Code 755-5.
[6] Id.
[7] Id.
[8] Burnett does not specifically characterize his challenge to the ordinance as either "facial" or "applied." However, given that the facts of the case demonstrate that Burnett was not engaged in the type of activity protected by either the United States or the Ohio Constitution's right of assembly, he cannot assert that the ordinance, as applied to him, violates the right of assembly. Accordingly, we interpret his argument as a facial-overbreadth challenge.
[9] Broadrick v. Oklahoma (1973), 413 U.S. 601, 612,93 S.Ct. 2908, 2916.
[10] Broadrick, supra.
[11] Broadrick, supra, 413 U.S. at 612-613, 93 S.Ct. at 2916.
[12] Broadrick, supra, 413 U.S. at 613, 93 S.Ct. at 2916.
[13] Broadrick, supra, 413 U.S. at 615, 93 S.Ct. 2918; see, also,New York v. Ferber (1982), 458 U.S. 747, 102 S.Ct. 3348; Regan v.Time, Inc. (1984), 468 U.S. 641, 104 S.Ct. 3262; Cincinnati v.Thompson (1994), 96 Ohio App.3d 7, 643 N.E.2d 1157.
[14] Shapiro v. Thompson (1969), 394 U.S. 618, 89 S.Ct. 1322;Memorial Hospital v. Maricopa County (1974), 415 U.S. 250,94 S.Ct. 1076; Wardwell v. Board of Education (C.A. 6, 1976),529 F.2d 625.
[15] See King v. New Rochelle Mun. Hous. Auth. (C.A.2, 1971),442 F.2d 646; Lutz v. City of York (C.A.3, 1990), 899 F.2d 255.
[16] Wardwell, supra; Wright v. City of Jackson (C.A.5, 1975),506 F.2d 900; Eldridge v. Bouchard (W.D.Va. 1986), 645 F. Supp. 749, affirmed without opinion, (C.A.4, 1987), 823 F.2d 546.
[17] See Lutz, supra(holding that intermediate scrutiny, which permits the imposition of reasonable restrictions on the time, place, and manner of exercising the right to intrastate travel so long as the law is narrowly tailored to meet significant government objectives, is the appropriate test to apply in evaluating impingements on the right of intrastate travel.)
[18] See Cincinnnati Municipal Code 755-1 and 755-5.
[19] See Cincinnati Municipal Code 755-11(a)(2).
[20] (1999), 159 Ore.App. 502, 978 P.2d 415.
[21] See preamble to Ordinance No. 229-1996.
[22] State v. Cook (1998), 83 Ohio St.3d 404, 414, 700 N.E.2d 570,579 (discussing distinction between civil sanction and criminal penalty), certiorari denied, (1999), ___ U.S. ___, 119 S.Ct. 1122.
[23] See State v. Bumpus (Oct. 2, 1998), Clark App. No. 97-CA-0110, unreported.
[24] See Crim.R. 7(D).
[25] Id.
[26] See State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184.
[27] Although the state's complaint failed to cite the specific subsection of R.C. 2911.21 that Burnett was charged with violating, because the language of the complaint closely tracked subsection (A)(3), we presume he was charged under that section.
[28] See State v. Shelton (1989), 63 Ohio App.3d 137,578 N.E.2d 473 (stating that trespass can be committed on public land); see, also Athens v. Bromall (1969), 20 Ohio App.2d 140, 252 N.E.2d 298
(construing "another," as used in R.C. 2901.21, the predecessor to R.C. 2911.21, to include municipal corporations).
[29] See Bridgeman, supra.