OPINION
{¶ 1} Appellant, Raymond N. Culver ("Culver"), appeals his conviction on one count of domestic violence in violation of Warren municipal ordinance 537.14, a first-degree misdemeanor, and one count of resisting arrest in violation of Warren municipal ordinance 525.09, a second-degree misdemeanor, following a jury trial in Warren Municipal Court.[1] Culver was sentenced to 30 days in the Trumbull County Jail on each count to be served consecutively.[2] Culver's sentence was stayed pending appeal. We affirm.
 {¶ 2} On May 28, 2002, Officers Brian Crites and Nick Carney of the Warren Police Department were called to respond to a possible domestic violence incident occurring at 888½ Summit Avenue, Northwest. Upon their arrival, Officer Carney talked with Culver outside of the house while Officer Crites spoke with Mrs. Culver inside. Mrs. Culver told Officer Crites that Culver had pushed her around, pulled her hair, and swore at her. Invoking the City of Warren's preferred arrest policy in domestic violence cases, Officer Crites went outside to arrest Culver.[3]
 {¶ 3} When officer Crites attempted to place a handcuff on him, Culver pulled away. The two officers then took Culver to the ground in an attempt to handcuff him. The officers struggled with Culver and commanded him repeatedly to "let go of the handcuffs" and "quit resisting." During the struggle, one of the officers advised Culver that he was under arrest for domestic violence and resisting arrest. Culver continued to struggle, but was ultimately subdued and placed into the police cruiser. During the fracas, the officers pepper sprayed and punched Culver. As a result, Culver sustained bruises and lacerations to his face and hands.
 {¶ 4} Culver was brought to trial the first time on November 6, 2002. Following the trial, but prior to charging the jury, one of the jurors was observed having a conversation with the domestic violence advocate. The domestic violence advocate, technically an employee of the court, had sat at the prosecutor's table during the trial. Although Culver indicated that he was willing to continue with the jury empanelled, the trial court declared a mistrial. Thereafter, Culver was tried again on January 13, 2003, which resulted in his conviction on both counts.
 {¶ 5} Culver assigns the following assignments of error for review:
 {¶ 6} "[1.] The Trial Court erred to the detriment of Appellant by failing to grant a directed verdict of acquittal on the charge of Domestic Violence.
 {¶ 7} "[2.] The Trial Court erred to the detriment of Appellant by failing to grant a directed verdict of acquittal on the charge of Resisting Arrest.
 {¶ 8} "[3.] The Trial Court erred to the detriment of Appellant, by failing to discharge the Appellant on the basis of double jeopardy."
 {¶ 9} Under the first assignment of error, Culver argues that there was insufficient evidence to convict him on the charge of domestic violence pursuant to Crim.R. 29(A).
 {¶ 10} The Ohio Supreme Court has defined "sufficiency" as "a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, quoting Black's Law Dictionary (6 Ed. 1990) 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id.
 {¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 12} Culver maintains that, "there can be no proof beyond a reasonable doubt if the alleged victim fails to offer any testimony of her injuries, and no trained physician or coroner testifies to the injuries on a person." We reject Culver's argument because the existence of an injury is not an essential element of the crime of domestic violence. In order to sustain Culver's conviction, the city was required to prove beyond a reasonable doubt that Culver "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." Warren, Ordinance 537.14(a). As long as there was competent, credible evidence before the jury that Culver attempted to cause Mrs. Culver physical harm, there was evidence sufficient to sustain the conviction.State v. Whitfield, 1st Dist. No. C-020241, 2002-Ohio-5984, at ¶ 13 (domestic violence statute "does not require any finding of injury, only an attempt to cause harm").
 {¶ 13} In the present case, the MVR tape of Culver's arrest records Mrs. Culver telling Officer Crites that Culver "pushed me a couple of times" and that he "pulled my hair." Officer Crites testified that Mrs. Culver was crying, had red marks about her neck and face, and was holding a bloody rag to her mouth. Officer Crites also testified that Mrs. Culver indicated with her hands that Culver had pushed her to the ground. Viewing this evidence in a light most favorable to the prosecution, a reasonable jury could conclude that Culver attempted to cause Mrs. Culver harm. Whitfield, 2002-Ohio-5984, at ¶ 13 (evidence that defendant had ripped a necklace from the victim's neck and pushed her over a stone wall sufficient to sustain charge of domestic violence). Culver's first assignment of error is overruled.
 {¶ 14} In the second assignment of error, Culver argues that he cannot be convicted of resisting arrest where the underlying arrest is unlawful. Culver maintains that his arrest was unlawful because the officer failed to inform Culver of his authority to make the arrest and the cause of the arrest as required by R.C. 2935.07.
 {¶ 15} The elements of resisting arrest are set forth in R.C.2921.33. R.C. 2921.33 provides that "no person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Under the circumstances, therefore, we must first determine whether Culver's arrest was "lawful."
 {¶ 16} R.C. 2935.07 states: "when an arrest is made without a warrant by an officer, he shall inform the person arrested of such officer's authority to make the arrest and the cause of the arrest." When probable cause exists for an arrest by a police officer, the failure to notify the accused of the cause of his arrest does not render the arrest illegal if he is notified of the offense with which he is charge soon after he is taken into custody. State v. Fairbanks (1972),32 Ohio St.2d 34, 41. R.C. 2935.07 provides that "[w]hen an arrest is made by a private person, he shall, before making the arrest, inform the person to be arrested of the intention to arrest him and cause of the arrest." (Emphasis added). State v. Rogers (1975), 43 Ohio St.2d 28, 32. It is clear that there is a distinction in the statute between law enforcement officers with an obvious authority to arrest and private persons.
 {¶ 17} The Supreme Court of Ohio has articulated four elements necessary for an arrest. The arresting party must have (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, (4) which is so understood by the person arrested. State v. Barker (1978),53 Ohio St.2d 135, paragraph one of the syllabus. A seizure is sufficient to give rise to an arrest when the four elements noted above are present. See, State v. Darrah (1980), 64 Ohio St.2d 22, 26.
 {¶ 18} An arrest can occur under two circumstances: An officer may execute a formal arrest by explicitly and unequivocally informing the subject that he is under arrest or an officer may perform a seizure of the subject that is tantamount to an arrest. State v. Qualey (Mar. 27, 1998), 2d Dist. No. 16705, 1998 Ohio App. LEXIS 1156, at 11. Further, inState v. Foster (Dec. 21, 2001), 11th Dist. No. 2000-T-0033, 2001 Ohio App. LEXIS 5840, we held that the magic words "you are under arrest" are not necessary to constitute an arrest. Id., at 13, quoting State v.Maurer (1984), 15 Ohio St.3d 239, 255.
 {¶ 19} In State v. Mink (Oct. 13, 1983), 2d Dist. No. 8315, 1983 Ohio App. LEXIS 12124, a case factually identical to the case sub judice, the Second District Court of Appeals held that the arrest and conviction of appellant were lawful even though the arresting officer did not use the magic words, "you are under arrest." "An arrest is determined from the totality of the circumstances * * *. [T]he officer acted for his own safety and ultimately subdued the appellant and placed him under his control. While the magic word arrest was not uttered, the use of the mace and bracelets spoke louder than words." Id., at 4, citing State v.Barker (1978), 53 Ohio St.2d 135.
 {¶ 20} In the instant matter, the officers attempted to handcuff Culver who refused to comply. A struggle ensued which found both officers on top of Culver instructing him to "let go of the handcuffs" and "quit resisting." Although the officers did not immediately announce that Culver was "under arrest," these facts persuade us that the officers affected an arrest similar to that illustrated in Mink, supra.
 {¶ 21} Furthermore, we have the additional benefit of a videotape of the arrest which demonstrates that the arresting officer told appellant he was under arrest. Specifically, thirty-eight seconds into the initial struggle, one of the officers informed Culver that he was under arrest for domestic violence and resisting arrest. In spite of being restrained and told that he was under arrest and to "stop resisting," appellant continued to resist for approximately two minutes and six seconds. Such conduct is enough to meet the elements of R.C. 2935.07 and2921.33. Therefore, appellant's arrest was lawful and the jury conviction for resisting arrest is affirmed. As such, Culver's second assignment of error is overruled.
 {¶ 22} In his third assignment of error, Culver argues that he was subjected to double jeopardy by being retried after the court declared a mistrial in his first trial. "The Double Jeopardy Clause of theFifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from multiple prosecutions for the same offense." State v. Morgan
(1998), 129 Ohio App.3d 838, 841, citing Oregon v. Kennedy (1982),456 U.S. 667, 671. "In cases where a mistrial has been declared without the defendant's request or consent, double jeopardy will not bar a retrial if (1) there was a manifest necessity or high degree of necessity for ordering a mistrial, or (2) the ends of public justice would otherwise be defeated." Id. at 841-842, citing Arizona v. Washington
(1978), 434 U.S. 497, 505-506. "Where the trial judge sua sponte declares a mistrial, double jeopardy does not bar retrial unless the judge's action was instigated by prosecutorial misconduct designed to provoke a mistrial, or the declaration of a mistrial constituted an abuse of discretion." State v. Glover (1988), 35 Ohio St.3d 18, syllabus (emphasis sic).
 {¶ 23} In this case, the trial court declared a mistrial during Culver's first trial in November 2002. After closing arguments were heard, but before jury instructions were given, defense counsel observed one of the jurors conversing with the trial court's domestic violence advocate. Upon request of defense counsel, the court's secretary halted the conversation. The domestic violence advocate had been introduced to the court by the prosecution and sat at the prosecutor's table during the trial. Thereupon, the trial court judge held a hearing in his chambers with the attorneys and Culver present. The trial court found, and it is not disputed, that the nature of the communication between the juror and the advocate was innocent and that it did not concern Culver's case. Despite the opposition of Culver and the prosecution, the court declared a mistrial in order to "avoid the appearance of impropriety."
 {¶ 24} We reject Culver's argument that the conversation between the domestic violence advocate and the juror constituted prosecutorial misconduct. It was the juror, not the advocate, who initiated the conversation. The conversation did not concern Culver's case. Finally, prosecutorial misconduct only bars retrial when that conduct is intended to provoke the defendant into moving for a mistrial. State v. Loza,71 Ohio St.3d 61, 70, 1994-Ohio-409, citing Kennedy, 456 U.S. at 676. Culver does not allege that the prosecution sought to provoke a mistrial.
 {¶ 25} Nor do we find that the trial court abused its discretion by declaring a mistrial due to the appearance of impropriety. "In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with contact and determining whether to declare a mistrial or to replace an affected juror." State v. Phillips,74 Ohio St.3d 72, 89, 1995-Ohio-171. Here the trial court determined that the appearance of impropriety was too great to allow the trial to continue, despite Culver's willingness to waive the error: "The Court finds that the conversation in question was so inappropriate in nature, that the fact that it occurred was not a `waiverable' matter." The court also determined that all jurors, including the alternate, had witnessed the impropriety so that there was no question of merely replacing the juror who had initiated the conversation.
 {¶ 26} "As was stated long ago, the `fountains of justice must be kept pure and free from suspicion, or the citizen will lose all respect for the laws, and the rights of persons, and property will become insecure.' To avoid pollution of the waters of justice, `suitors and jurors must not place themselves in a position where their conduct creates suspicion.'" Budoff v. Holiday Inns, Inc. (C.A. 6, 1984),732 F.2d 1523, 1526, quoting Davidson v. Manlove (1865), 42 Tenn. 346,350.
 {¶ 27} We also distinguish the Morgan case relied on by Culver. In that case, the trial court declared a mistrial because the jury had been tainted by evidence not properly before it. 129 Ohio App.3d at 840. The Eighth District held that the court had abused its discretion and barred retrial of the defendant under the double jeopardy clause. The appellate court was "troubled" because "nowhere in the record is there any indication of what this `tainted evidence' consisted of or its significance." Id. at 842. In the present case, the record is abundantly clear regarding the facts of the appearance of impropriety and why the trial court felt that declaring a mistrial was justified. Culver's third assignment of error is overruled.
 {¶ 28} For the foregoing reasons, the judgment of the Warren Municipal Court convicting Culver of domestic violence and resisting arrest is affirmed.
Judgment affirmed.
Judith A. Christley. J., Concurs.
Diane V. Grendell, J., concurs in part, dissents in part, with a dissenting opinion.
[1] Warren municipal ordinance 537.14 corresponds to R.C. 2919.25. Warren municipal ordinance 525.09 corresponds to R.C. 2921.33.
[2] The municipal court sentenced Culver to 180 days for domestic violence with 150 days suspended and to 90 days for resisting arrest with 60 days suspended. The court also sentenced Culver to three years non-reporting probation.
[3] The preferred arrest policy provides that, "[i]f there arereasonable grounds to believe that the offense of domestic violence or violation of protection order has been committed, it is the `PREFERRED'
course of action to arrest that person or persons responsible." (Emphasis added.)