[Cite as *Barberton v. Hicks*, 2011-Ohio-2769.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF SUMMIT | )ss:<br>) | NINTH JUDICIAL DISTRICT |

| STATE OF OHIO | C.A. No. 24708 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| KEVIN L. HICKS | BARBERTON MUNICIPAL COURT<br>COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CRB 0900154 |

## DECISION AND JOURNAL ENTRY

Dated: June 8, 2011

MOORE, Judge.

{¶1}    Appellant, Kevin L. Hicks, appeals his conviction for resisting arrest.  In fifteen assignments of error, he argues that the evidence was insufficient and his conviction was against the manifest weight of the evidence, the arrest was not lawful, he did not receive a fair trial, his trial counsel was ineffective, his sentence did not include credit for time served, and cumulative errors deprived him of a fair trial.  This Court disagrees and overrules the assignments of error.

I.

{¶2}    On the evening of January 16, 2009, two City of Barberton police officers went to Mr. Hicks' residence to arrest him for an outstanding warrant.  Officer Colgan and Officer Eberhart arrived in a marked police car and both were in uniform.  They saw Mr. Hicks drive into his driveway and drove in behind him.  They then watched him park his car in the garage and walk toward the back of his house.  When the officers got out of the police car, Mr. Hicks

looked at them and started to run. Officer Eberhart, who knew Mr. Hicks from a prior event, yelled "Kevin, stop, Barberton Police."

{¶3} Mr. Hicks did not stop, but rather climbed over a fence and ran southward. Officer Eberhart followed and again yelled "Kevin, stop, Barberton Police." Mr. Hicks continued southbound, running through backyards, and Officer Eberhart lost sight of him. The officer then saw Mr. Hicks' footprints in the snow in a wooded area at the end of a street. At this point, Officer Eberhart called for the canine officer to come so they could track Mr. Hicks and other officers were also on their way.

{¶4} When the canine officer, Officer Davis, arrived, he and Officer Eberhart spoke about what had happened. Officer Eberhart pointed to the area where he had last seen Mr. Hicks. The officers and the dog then followed the tracks into the darkened woods. Officer Eberhart drew his gun and walked behind Officer Davis for backup. The dog located Mr. Hicks who was hiding next to a wood pile. Officer Davis testified that the dog dove behind the wood pile and took hold of Mr. Hicks' leg. He then saw Mr. Hicks sit "up on his knees." Mr. Hicks sustained a bite on his left leg as the dog held him.

{¶5} Officer Davis testified that he ordered Hicks to lie on the ground. Hicks ignored the order and continued to be up on his knees. Because it was dark and the officers could not see Mr. Hicks' hands, they feared he might have a gun. Both officers began yelling "Kevin, get on the ground." After several verbal commands, Mr. Hicks finally complied. Officer Eberhart placed him in handcuffs and the dog was given the command to release him.

{¶6} Mr. Hicks was charged with resisting arrest pursuant to R.C. 2921.33 and was later served with the outstanding warrant that precipitated this event. He was represented by counsel in a bench trial where the trial court heard testimony from Officers Colgan, Davis, and

Eberhart. Mr. Hicks did not testify. The trial court determined that Mr. Hicks resisted arrest when he did not comply with the officers' orders to lie down. He was convicted of resisting arrest and he has appealed the conviction.

## II.

{¶7} To begin, we note that Mr. Hicks has presented his arguments before this Court pro se. With respect to pro se litigants, this Court has observed:

> "[P]ro se litigants should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities. However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject to the same rules and procedures to which represented litigants are bound. He is not given greater rights than represented parties, and must bear the consequences of his mistakes. This Court, therefore, must hold [pro se appellants] to the same standard as any represented party." (Internal citations omitted.) *Sherlock v. Myers*, 9th Dist. No. 22071, 2004-Ohio-5178, at ¶3; *Countrywide Home Loans Servicing, L.P. v. Murphy-Resling,* 9th Dist. No. 25297, 2010-Ohio-6000, at ¶4.

{¶8} Accordingly, while this Court has made every effort to determine and address the merits of Mr. Hicks' contentions, he is subject to the same rules and procedures as if he were represented by an attorney.

{¶9} Mr. Hicks has presented fifteen assignments of error to this Court, but he has not presented specific arguments for each of them. In his brief, Mr. Hicks stated that "the key elements for purpose of this appeal are whether a lawful arrest occurred, and whether Mr. Hicks resisted that arrest." To facilitate review, the Court has grouped and rearranged the assignments of error based upon the issues they raise.

## A.

### SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE

{¶10} Mr. Hicks was charged with resisting arrest. R.C. 2921.33(A) states: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." In

his eighth, ninth, eleventh, and fifteenth assignments of error, he has argued that the evidence at trial was insufficient to demonstrate that he resisted arrest and that the trial court lost its way in so finding. Those assignments of error are as follows:

### VIII. EIGHT[H] ASSIGNMENT OF ERROR

"THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT'S MOTION FOR AN ACQUITTAL. STATE['']S WITNESS K-9 OFFICER BRIAN DAVIS SEVERLY IMPEACHED THE STATE['']S CASE BY TESTIFYING THAT THE APPELLANT DID NOT RESIST ARREST OF ANYONE."

### IX. NINTH ASSIGNMENT OF ERROR

"THE TRIAL COURT ABUSED IT[]S DISCRETION WHEN IT FOUND APPELLANT GUILTY OF RESISTING ARREST BASED ON THE ELEMENT [THAT] THE CANINE ACTUALLY ARRESTED THE APPELLANT. THE STATE OF OHIO HAS NO LAWS ON RESISTING ARREST OF A CANINE."

### XI. ELEVEN[TH] ASSIGNMENT OF ERROR

"THE TRIAL COURT CLEARLY LOST ITS WAY BY JOURNALIZING THAT OFFICERS OBSERVED APPELLANT PULL INTO A DRIVEWAY ON VAN BUREN WHEN OFFICERS TESTIFIED THAT THEY WERE ON EDWARD STREET, KREIDER STREET AND HAROLD STREET, AND THERE IS NO EVIDENCE OFFICERS ORDERED APPELLANT TO SPECIFICALLY LIE DOWN ON THE GROUND."

### XV. FIFTEENTH ASSIGNMENT OF ERROR

"THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT AND AS A RESULT THE FEDERAL CONSTITUTION AND THE OHIO CONSTITUTION REQUIRE THE CONVICTION TO BE REVERSED WITH PREJUDICE TO FURTHER PROSECUTION."

{¶11} In his motion for acquittal, counsel argued that Mr. Hicks was not under arrest when he fled and that the arrest did not occur until an officer placed him in handcuffs. The testimony was undisputed that, from that point forward, Mr. Hicks complied fully with the officers' instructions. In the alternative, counsel argued that the dog acted, in effect, as a set of

handcuffs and that Mr. Hicks did nothing to resist the dog's hold on him. According to Mr. Hicks' counsel, noncompliance with the order to lie down did not amount to resistance.

{¶12} The court asked both parties to brief the issue of when an arrest occurs. After considering the testimony at trial and those additional arguments, the court concluded that "with the dog having a hold on the defendant's leg, coupled with the officers being in close proximity, there was at the very least constructive seizure of the defendant." Further, he found that Hicks resisted that arrest "[b]y not complying with the orders of the officers to lie down[.]"

{¶13} "Arrest" means "to stop or stay, as signifies a restraint of a person." *State v. Darrah* (1980), 64 Ohio St.2d 22, 26, quoting *State v. Barker* (1978), 53 Ohio St.2d 135, 139. "An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." Id.

{¶14} In this case, the police had a purpose to take Mr. Hicks into custody; they were acting on a warrant. They also had the authority; they were in full uniform and had properly identified themselves to Mr. Hicks as Barberton Police. Officer Eberhart testified that he was within five feet of Mr. Hicks when he yelled "Kevin stop, Barberton Police." The fact that Hicks fled despite hearing that command suggests that he understood that they were there to seize or detain him. The only issue presented is when did the "actual or constructive seizure or detention of his person" take place, because that will inform as to whether Mr. Hicks resisted arrest.

{¶15} When considering a challenge to the sufficiency of the evidence in a criminal case, a reviewing court must determine whether the prosecution met its burden of producing evidence that was sufficient to sustain a conviction. *State v. Thompkins* (1997), 78 Ohio St.3d

380, 390 (Cook, J., concurring). The court must view that evidence in a light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶16} As Mr. Hicks hid near the wood pile, the officers tracked him with the dog. Based on the officers' testimony, the dog was acting pursuant to commands from a trained canine officer to find Mr. Hicks. The dog's grip on Mr. Hicks' leg constituted a physical seizure of Mr. Hicks' person. In light of the uniformed officers calling him by name during their pursuit, the dog holding on to his leg, and the officers' corresponding commands to lie down, Mr. Hicks would have indeed understood that this was a seizure of his person. Accordingly, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the trial court to determine that the arrest began at this point.

{¶17} In his motion for acquittal, Mr. Hicks pointed to the officers' testimony that he was compliant from the point they handcuffed him. Such a narrow view of the event is not warranted, however, under Ohio law. The officers arrived at the house with the express purpose to arrest Mr. Hicks. They testified that when he saw them, he began running before they could announce that he was being placed under arrest. It was Mr. Hicks' behavior that delayed the arrest from taking place, culminating in the fact that he did not comply with the orders of the officers to lie down and submit to being handcuffed.

{¶18} "Resisting," as it is used for a charge of resisting arrest, is not limited to situations involving active force; it can also include a reckless act. R.C. 2921.33(A). Ohio Revised Code

2901.22(C) states, in relevant part: "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."

{¶19} This Court has determined that delaying an arrest by preventing the seizure or detention of a person may constitute resisting arrest because it constitutes reckless resistance. *State v. Thomas* (Feb. 1, 1995), 9th Dist. No. 2910, at *2. By committing an act giving rise to the delay, a person may be proceeding with heedless indifference to the consequences and disregarding a known risk that his conduct will prevent arrest. Id.

{¶20} In *Thomas*, a defendant was identified as an assailant in a bar fight. When officers attempted to arrest him outside the bar, they told him to place his hands on a nearby car. According to an officer, the defendant refused to put his hands on the car and, instead, threw down his coat, assumed a "fighting stance," and stepped backwards. Id. at *3. The defendant argued that because he was not initially told he was under arrest, and because he backed away without threatening the officer, then submitted when he was handcuffed, he could not be guilty of resisting arrest. This Court noted that there was evidence that the defendant repeatedly disobeyed commands of a police officer to submit to authority and assumed a stance that was contrary to authority. This Court stated:

> "This Court, as well as other Ohio appellate courts, have previously recognized that conduct which delays an arrest procedure, or requires the use of additional force in an arrest procedure, may constitute resisting arrest." Id. at *2. See also, *State v. Wagner* (Aug. 11, 1993), 9th Dist. No. 2205, at 5-6; *Akron v. Detwiler* (July 5, 1990), 9th Dist. No. 14385, at 19; *State v. Williams* (1992), 84 Ohio App.3d 129, 133; *Athens v. Bromall* (1969), 20 Ohio App.2d 140, 149-50 (Stephenson, J., concurring).

Accordingly, this Court determined that delaying his arrest by refusing to peacefully comply with an officer's order to place his hands on the car and by choosing to back away while

maintaining a fighting stance, the defendant proceeded with heedless indifference to the consequences of his actions. Id.

{¶21} In this case, Officer Eberhart called to Mr. Hicks several times and told him to stop. Instead, Mr. Hicks ran into the woods and hid behind a wood pile. After the police dog found him and took hold of his leg, he refused to comply with the officers' repeated orders to lie down. Such actions were taken with heedless indifference to the consequences and disregarded a known risk that his conduct was delaying the officers' attempt to seize or detain him.

{¶22} In his eleventh assignment of error, Mr. Hicks has argued that the verdict was against the manifest weight of the evidence because the officers could not see him pull into his driveway and there was no evidence that they later told him to lie down on the ground. Before addressing manifest weight, this Court points out that the location of the officers called in by Officers Colgan and Eberhart and their relation to the three streets was not included in the testimony presented at trial. Rather, the issue of the officers' location appears to come from a Deputy Report for Incident 09-00767 that was not introduced in evidence.

{¶23} If a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, paragraph one of the syllabus. Whether more than one officer observed Mr. Hicks pull into the driveway has no bearing on the actual conviction for resisting arrest and does not create a "conflict of evidence." Mr. Hicks seems to argue this alleged inconsistency merely as a way to discredit the officers' testimony. Notwithstanding Hicks' reasoning, Officer Colgan

and Officer Eberhart both gave express testimony that they saw Mr. Hicks pull into his driveway. There was nothing in the record to contradict their statements or to cast doubt on their credibility in making them.

{¶24} Similarly, Officer Eberhart and Officer Davis testified that they told Mr. Hicks multiple times to lie down. There was no conflicting evidence offered that would create an issue on this matter for the court to resolve and nothing to question the officers' credibility in making the statements. The court did not lose its way in finding that Mr. Hicks was told to lie down.

{¶25} Accordingly, there was sufficient evidence for the court to conclude that the elements of arrest and resist were met and the trial court did not lose its way and create such a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. The eighth, ninth, eleventh, and fifteenth assignments of error are overruled.

C.

LEGALITY OF THE ARREST

{¶26} In his second, third, fourth, fifth, and sixth assignments of error, Mr. Hicks has argued that his arrest was not lawful. These assignments are as follows:

**SECOND ASSIGNMENT OF ERROR**

"BARBERTON POLICE VIOLATED REVISED CODE 2935.07 WHEN OFFICERS DID NOT INFORM THE APPELLANT OF THE NATURE OF HIS ARREST AS WELL AS FAILING TO ADVISE THE APPELLANT OF HIS MIRANDA RIGHTS."

**THIRD ASSIGNMENT OF ERROR**

"BARBERTON POLICE VIOLATED THE APPELLANT'S 4TH AMENDMENT U.S. CONSTITUTIONAL RIGHT AS WELL AS THE BARBERTON POLICE DEPARTMENTAL POLICY AND PROCEDURES ON THE DEPLOYMENT OF THE K-9 WHICH AMOUNTED TO EXCESSIVE FORCE."

**FOURTH ASSIGNMENT OF ERROR**.

"BARBERTON POLICE VIOLATED THE APPELLANT'S 4TH AMENDMENT RIGHT WHEN THEY INITIATED LETHAL FORCE COVERAGE IN THE ABSENCE OF A FELONY AND WITHOUT WARNING OR ANY THREAT TO THE OFFICERS OR APPELLANT HIMSELF."

## FIFTH ASSIGNMENT OF ERROR

"THE TRIAL COURT ERRED BY CONVICTING THE APPELLANT OF RESISTING ARREST UNDER []OHIO REVISED CODE 2921.33[], WHEN THERE WAS NO EVIDENCE OF A LAWFUL ARREST IN VIOLATION OF THE APPELLANT'S U.S. CONSTITUTIONAL 6TH AMENDMENT RIGHT TO A FAIR TRIAL."

## SIXTH ASSIGNMENT OF ERROR

"APPELLANT WAS DENIED HIS 6TH AMENDMENT RIGHT TO CONFRONTATION WHEN NO EVIDENCE OF A STATUTORILY AUTHORIZED WARRANT OR SUMMONS WAS INTRODUCED AND IF THERE WAS ONE IT WOULD BE DEFICIENT IN VIOLATION OF THE 4TH AMENDMENT OF THE U.S. CONSTITUTION."

{¶27} Mr. Hicks claims that the arrest was not lawful and could not be the basis for the charge of resisting arrest. He argues that the arrest was unlawful because he was not informed of the nature of his arrest and given Miranda warnings, it was carried out using excessive force and "lethal force coverage," and the warrant was not produced at the time of the arrest and was deficient when given.

{¶28} With respect to Mr. Hicks' contentions that his constitutional rights were violated, he failed to preserve any objection on these issues at the trial court and they were not addressed in his motion for acquittal. "An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, paragraph one of the syllabus. Therefore, he forfeited these issues. Further, we do not reach the merits of his contentions because he did not argue plain error to this Court. While a defendant who forfeits such an argument still may argue

plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so. See *State v. Hairston*, 9th Dist. No. 05CA008768, 2006–Ohio–4925, at ¶11.

{¶29} Accordingly, we decline to address the lawfulness of his arrest on the merits. These assignments of error are overruled.

D.

DENIAL OF A FAIR TRIAL

{¶30} In this group of assignments of error, Mr. Hicks argues that he was denied a fair trial because hearsay statements were made, he had not executed a jury waiver, and the prosecutor committed misconduct by improperly raising Mr. Hicks' prior history and for failing to provide him with a police report regarding use of force. Those assignments are as follows:

**SEVENTH ASSIGNMENT OF ERROR**

"APPELLANT WAS DENIED HIS 6TH AMENDMENT RIGHT OF CONFRONTATION AS WELL AS HIS RIGHTS UNDER THE OHIO CONSTITUTION TO CONFRONT WITNESSES WHEN SEVERAL HEARSAY STATEMENTS WERE INTRODUCED INTO COURT THROUGH TRIAL TESTIOMONY WHICH IS ALSO A VIOLATION OF THE OHIO RULE OF EVIDENCE []404(B), 608(B)."

**TENTH ASSIGNMENT OF ERROR**

"APPELLANT WAS DENIED HIS RIGHT TO A JURY TRIAL [BECAUSE] THERE WAS NO PROPERLY EXECUTED JURY WAIVER IN DIRECT VIOLATION OF THE 6TH AND 14TH AMENDMENTS [TO] THE U.S. CONSTITUTION AND THE OHIO CONSTITUTION."

**FOURTEENTH ASSIGNMENT OF ERROR**

"A) [] THE PROSECUTOR ENGAGED IN [PROSECUTORIAL MISCONDUCT] IN BRINGING UP APPELLANT'S ALLEGED HISTORY OF VIOLENCE WITH NO EVIDENCE TO SUPPORT THAT, THOSE COMMENTS WERE IMPROPER AND VIOLATED OHIO RULES OF EVIDENCE 404B AND 608B AS WELL AS APPELLANT'S CONSTITUTIONAL RIGHT TO CONFRONTATION.
B) THE STATE AS WELL AS BARBERTON POLICE OFFICERS WITHHELD CRUCIAL EVIDENCE FROM THE DEFENSE WHEN THEY

NEGLECTED TO PROVIDE A USE OF FORCE REPORT AS REQUIRED BY THE BARBERTON POLICE DEPARTMENTAL PROCEDURE: 2.000 Page 4. THIS REPORT WOULD BE CRUCIAL EVIDENCE TO SUPPORT APPELLANT'S EXCESSIVE FORCE ARGUMENT."

**{¶31}** Again, these issues were not raised in the trial court and Mr. Hicks has not argued plain error to this court. Accordingly, this Court will not address their merits. The seventh, tenth, and fourteenth assignments of error are overruled.

E.

CREDIT FOR TIME SERVED

**TWELFTH ASSIGNMENT OF ERROR**

"THE TRIAL COURT IMPOSED A[N] UNCONSTITUTIONAL SENTENCE ON APPELLANT WHEN IT FAILED TO GIVE CREDIT FOR TIME APPELLANT SPENT IN JAIL."

**{¶32}** In his twelfth assignment of error, Mr. Hicks has asserted that the trial court erred by failing to give him credit for time served in the Summit County Jail. Although the docket and the trial court's judgment reflect that the court held a sentencing hearing, a transcript of that hearing has not been provided to this Court. As a result, we cannot determine what occurred at the sentencing hearing.

**{¶33}** Pursuant to App.R. 9(A), the record on appeal must contain the transcript of proceedings. It is an appellant's duty to transmit that transcript to the court of appeals. App.R. 10(A); Loc.R. 5(A). This duty falls to the appellant because the appellant has the burden of establishing error in the trial court. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199; *State v. Mundy*, 9th Dist. No. 08CA0047-M, 2009-Ohio-1136. When the transcript of a hearing is necessary to resolve assignments of error, but such transcript is missing from the record, the reviewing court has "no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp*, 61 Ohio St.2d at 199.

**{¶34}** We affirm the judgment of the trial court. The twelfth assignment of error is overruled.

F.

INEFFECTIVE ASSISTANCE OF COUNSEL

**<u>THIRTEENTH ASSIGNMENT OF ERROR</u>**

"APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE 5TH. 6TH, [AND] 14TH AMENDMENTS [TO] THE U.S. CONSTITUTION AS WELL AS THE OHIO CONSTITUTION ARTICLE 1 SECTION 10 ON MULTIPLE ISSUES:

A) FAILURE TO OBJECT TO INFLAMMATORY EVIDENCE IN REGARDS TO APPELLANT'S HISTORY.

B) FAILURE TO OBJECT TO HEARSAY

C) FAILURE TO PRESENT EVIDENCE OF EXCESSIVE FORCE

D) FAILURE TO OBJECT TO A DEFICIENT WARRANT

E) FOR IMPLYING THAT APPELLANT SMELLED OF MARIJUANA AND OR WAS HIGH OFF DRUGS WHEN THERE WAS NO EVIDENCE OF THAT."

**{¶35}** Mr. Hicks' thirteenth assignment of error contends that his trial lawyer was ineffective, thereby violating his constitutional rights. He has argued that his lawyer failed to object to a number of the prosecutor's questions, which he claimed elicited improper testimony, failed to present evidence, and improperly implied that he was using drugs.

**{¶36}** To establish that his lawyer was ineffective, Mr. Hicks had to demonstrate two things: 1) his counsel's performance was deficient by falling below an objective standard of reasonable representation, and 2) he was prejudiced by the errors such that, by a reasonable probability, had they not occurred the result of the trial would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio 3426, at ¶204, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 694; *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. "A

reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

**{¶37}** First, Mr. Hicks claims that his counsel was ineffective because he failed to object to the officers' testimony that they had heard Mr. Hicks had a history of violence. Rather than objecting to the testimony, counsel used it as a means of discrediting the witness. After Officer Davis testified on direct that he heard Mr. Hicks had been violent toward other officers, counsel had him admit on cross examination that he had no personal knowledge of that statement and that he had not seen a record of it in Mr. Hicks' police record.

**{¶38}** In his brief, Mr. Hicks does not argue how his counsel's strategy was deficient. Nor has he demonstrated that, had the testimony been prohibited, the outcome of the trial would have been different. Accordingly, in the context of these facts, counsel was not ineffective in failing to object to the statement.

**{¶39}** Second, Mr. Hicks claims that there were three hearsay statements to which his counsel should have objected. None of those statements, however, is hearsay and none can be used as the basis for claiming error.

**{¶40}** The first statement claimed to be hearsay is Officer Colgan's testimony that she was told "Marshals were looking for him." "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). It is well established that "extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Thomas* (1980), 61 Ohio St.2d 223, 232.

**{¶41}** In this case, the testimony was offered to explain the subsequent activities of the witness in her attempt to arrest Mr. Hicks. See *Thomas*, 61 Ohio St.2d at 223. Whether U.S.

Marshalls were in fact looking for Hicks is irrelevant to the substance of this case. Even if there had been an objection, the testimony would have been properly admitted to explain the officer's actions. Accordingly, there was no error and counsel was not deficient in failing to object to the admission of the statement.

{¶42} The next two instances of alleged hearsay concern Officer Davis' statement that he had heard that Mr. Hicks was violent towards other officers. The substance of the exchange follows:

> "Q. Regarding Mr. Hicks' record, you're aware that he had offenses of violence on his record, correct?
>
> "A. I knew there was escape. I know there was – I knew of incidents that he had with another officer that was kind of alarming, I guess, as far as dealing with him."

{¶43} Officer Davis subsequently testified that while that information did not affect the way he handled the dog, it raised concern for how he dealt with Mr. Hicks. For example, he did not announce his presence or the dog's presence in the woods because it would have given away his position. This decision was premised on both tactical considerations and officer safety concerns. To the extent that the testimony of past violence was offered, it was not to prove the truth of the matter asserted, but rather to explain the effect it had on the officer in conducting the track. Accordingly, the statement was not hearsay.

{¶44} Third, Mr. Hicks argues in the assignment of error that his counsel failed to "present evidence of excessive force." He does not, however, explain what that evidence might have been and why this alleged failure was deficient to such a degree that his representation fell below an objective standard of reasonableness. Further, he did not demonstrate that, but for the alleged error, the trial would have been different.

{¶45} Fourth, Mr. Hicks has claimed that the warrant for his arrest was not "introduced" and that "if there was one it would be deficient." He has argued that his attorney should have objected to the failure to produce the warrant and to the contents of the warrant. Pursuant to Crim.R. 4(D)(3) an arrest warrant need not be given at the time of the arrest. The rule simply states that it must be given to a defendant "as soon as possible." Id. Moreover, in his brief to this Court, Mr. Hicks has failed to point to any facts that would support his claim that the content of the warrant was deficient.

{¶46} As for the fifth contention that his counsel erred by implying during cross examination that Mr. Hicks "smelled of marijuana and or was high off drugs," this Court's review of the record reveals that it was a trial tactic. This testimony first came to light when Mr. Hicks' attorney asked the following questions of Officer Eberhart:

"Q. Okay. And when you had finally gotten ahold of Mr. Hicks, did he not smell of marijuana?

Yeah.

Okay. And you've dealt with Mr. Hicks prior, have you not?

Uh-huh.

All right. Mr. Hicks' demeanor this time was absolutely different from the previous time you had dealt with him, correct? * * * He wasn't argumentative. He was very compliant with you?

Yeah. He was high.

All right. You believe he was high off the drugs?

Uh-huh."

{¶47} It appears from this exchange that counsel was attempting to persuade the judge that, other than initially running, his client was compliant with the officers throughout the arrest process. Counsel appeared to suggest through his cross examination of the officer that because

of the marijuana his client ingested, he was too mellow to resist arrest. These trial tactics might be debatable. The Ohio Supreme Court has held, however, that debatable trial tactics do not constitute ineffective assistance. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, at ¶227. This exchange does not demonstrate that counsel's performance fell below an objective standard of reasonable representation. Further, this Court cannot conclude that it resulted in prejudice such that the result of the trial would have been different without it. This assignment of error is overruled.

G.

CUMULATIVE ERRORS

**FIRST ASSIGNMENT OF ERROR**

"THE CUMULATIVE ERRORS DENIED APPELLANT A FAIR TRIAL IN VIOLATION OF THE APPELLANT'S 6TH [AND] 14TH AMENDMENT U.S. CONSTITUTIONAL RIGHTS AND ALSO THE APPELLANT'S OHIO CONSTITUTIONAL RIGHTS."

{¶48} In his first assignment of error, Mr. Hicks argues that the cumulative effect of errors deprived him of his constitutional rights to a fair trial. In support, he claims that there was insufficient evidence that he was under arrest at the time of the alleged resistance and that the arrest was not lawful. In so arguing, he has essentially relied upon all of the grounds discussed in his other assignments of error to argue that, taken as a whole, they constituted prejudicial error.

{¶49} Although separately harmless errors may violate a defendant's right to a fair trial when considered together, a reviewing court must first determine that multiple errors were committed. See *City of Cleveland v. Smith*, 8th Dist. No. 94684, 2011-Ohio-1553. Each of Mr. Hicks' assignments of error has been addressed above. This Court has determined that all the matters complained of in relation to the trial itself were either forfeited or were not error.

Accordingly, those incidents during trial that plaintiff has claimed error could not combine to prejudice him. Plaintiff's first assignment of error is overruled.

III.

{¶50} Mr. Hicks' fifteen assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

DICKINSON, P. J.
CONCURS, SAYING:

{¶51} I concur in the majority's judgment and most of its opinion. I write separately to note two things. First, I would analyze Mr. Hicks's second, third, fourth, fifth, sixth, seventh, tenth, and fourteenth assignments of error for plain error. None of those claimed errors rise to the level of plain error. Second, Officer Davis's statements, quoted at paragraph 42 of the majority opinion, that he knew there was escape and that he knew of alarming incidents involving Mr. Hicks and another officer were not hearsay because they were not out of court statements. Those statements may have been objectionable for another reason, but they were not statements, "other than one[s] made by the declarant while testifying at the trial or hearing. . . ." Evid. R. 801(C). It is irrelevant, therefore, whether they were offered for the truth of the matter asserted. I would overrule the part of Mr. Hicks's thirteenth assignment of error related to those statements because they were not out of court statements.

BELFANCE, J.
DISSENTS, SAYING:

{¶52} I respectfully dissent because I would conclude that there was insufficient evidence of resisting arrest.

{¶53} Resisting arrest requires a lawful arrest and resistance to it. See R.C. 2921.33(A). The evidence, when viewed in a light most favorable to the State does not demonstrate that Mr. Hicks resisted or interfered with his arrest. Pursuant to R.C. 2921.33(A), "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." The Ohio Supreme Court has identified four necessary elements of an arrest. The arresting party must (1) have "[a]n intent to arrest, (2) under real or pretended authority, (3) accompanied by an

actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Barker* (1978), 53 Ohio St.2d 135, paragraph one of the syllabus. The evidence established that the officers initially appeared at Mr. Hicks' home because they had a warrant for his arrest. They called out to Mr. Hicks and he ran away. Although the majority suggests otherwise, I cannot conclude that Mr. Hicks resisted an arrest at this point. There is no question that the officers intended to arrest Mr. Hicks, however, without some overt manifestation of an intent to arrest or an actual arrest, simply avoiding police does not amount to resisting arrest. *State v. Deer*, 6th Dist. No. L-06-1086, 2007-Ohio-1866, ¶33 ("The state must also show that appellant knew he was under arrest before resisting."); see, also, *State v. Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, ¶9 (yelling "stop," or "you need to stop" was not an arrest). It is undisputed that the officers simply called out to Mr. Hicks but did not inform him that he was under arrest. If the officers neither expressed an intent to arrest, nor actually arrested him, there was not yet any arrest for Mr. Hicks to resist. See, e.g., *Warren v. Culver*, 11th Dist. No. 2003-T-0023, 2004-Ohio-333, ¶¶14-21. Although this behavior might provide the foundation for another charge, the fact that Mr. Hicks ran from police does not constitute resisting arrest. *Carroll* at ¶14 (concluding fleeing from police might constitute obstructing official business); *State v. Griffin* (May 26, 1999), 9th Dist. No. 19278, at *1-*2; *State v. Brickner-Latham*, 3rd Dist. No. 13-05-26, 2006-Ohio-609, ¶28 (fleeing from police was sufficient evidence to support conviction for obstructing official business).

{¶54} Notably, the State did not argue that Mr. Hicks resisted arrest because he ran from police.[1] Instead, it argued that Mr. Hicks resisted arrest once the police dog had a grip on him.

---

[1] Although not dispositive, it is interesting to note that the trial court found that Mr. Hicks resisted arrest after the dog had bitten him, when he failed to obey the officers' commands, rather than when he initially ran away from the officers at his house.

At that point in time, even assuming that the elements of arrest had been met, I would conclude that Mr. Hicks did not actually *resist* the arrest. The evidence established that the dog jumped over the wood pile and began to bite and hold Mr. Hicks' leg. At that point, the officers' uncontroverted testimony was that they told Mr. Hicks to lie down many times. One of the officers testified that Mr. Hicks was told to lie down for about fifteen seconds before he complied. Thus, according to the State, Mr. Hicks resisted arrest by remaining on his knees for approximately fifteen seconds, rather than lying down immediately upon command.

{¶55} It is not clear from the judgment entry that the court took into account Mr. Hicks' eventual compliance with the officers' instructions. The court's entry does not note Mr. Hicks' compliance or the length of time that he delayed, but rather only his initial failure to immediately obey the commands. However, I do not believe that Mr. Hicks resisted at this point. No testimony indicates that Mr. Hicks attempted to stand up, escape, or that he even struggled with the dog. There is no suggestion that he attempted to interfere with his arrest. Indeed, one officer admitted upon cross examination that Mr. Hicks was "strangely compliant." It makes sense that Mr. Hicks took fifteen seconds to comply with the officers' command to lie down given that Mr. Hicks would need such a brief period to digest what was happening and then figure out how he could comply with the officers' command to lie down while a dog was biting his leg. Mr. Hicks' brief and passive delay indicates surprise, shock, and possibly confusion as to how he could lie down while at the same time being restrained and bitten by a dog, but I would not conclude that he recklessly interfered with or resisted a lawful arrest. Accordingly, I dissent.


APPEARANCES:

KEVIN L. HICKS, pro se, Appellant.

LISA OKOLISH MILLER, Law Director, and MICHELLE L. BANBURY, Assistant Law Director, for Appellee.