[Cite as *State v. Fenter*, 2022-Ohio-3279.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PAULDING COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                       CASE NO. 11-22-01

      v.

SAMANTHA C. FENTER,                   O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Paulding County Common Pleas Court
Trial Court No. CR-19-637

Judgment Affirmed

Date of Decision: September 19, 2022

APPEARANCES:

    *Brian A. Smith* for Appellant

    *Joseph R. Burkard* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Samantha C. Fenter, appeals the December 7, 2021 judgment of the Paulding County Court of Common Pleas. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} In the early hours of November 12, 2019, Sergeant Ron McCabe and Deputy Cierra Moran, law enforcement officers with the Paulding County Sheriff's Office, arrived at a residence in Melrose, Ohio to execute felony arrest warrants for Fenter and her partner, Lauro Sanchez. The deputies encountered Sanchez on the front porch of the residence and began to take him into custody. Fenter came out of the residence onto the porch. When the deputies advised Fenter she too was being arrested for an outstanding arrest warrant and ordered her to turn around to be handcuffed, Fenter ran back into the house. Sergeant McCabe pursued Fenter approximately 30 feet inside the residence where he arrested her. While in pursuit of Fenter, Sergeant McCabe observed her toss a plastic baggie onto the floor in the house. The baggie was subsequently determined to contain methamphetamine.

{¶3} On December 12, 2019, the Paulding County Grand Jury returned an indictment charging Fenter with a single count of possession of methamphetamine in violation of R.C. 2925.11(A), a fifth-degree felony. On December 18, 2019, Fenter appeared for arraignment and pleaded not guilty.

{¶4} On October 28, 2020, Fenter filed a motion to suppress the methamphetamine seized on November 12, 2019. In her motion, Fenter argued that the methamphetamine was obtained pursuant to an illegal arrest and was, therefore, fruit of the poisonous tree. Specifically, Fenter argued her arrest was unlawful because the deputies refused to provide her with a copy of the arrest warrant or inform her of the nature of the charges against her. On November 24, 2020, the State filed its response in opposition to Fenter's motion to suppress.

{¶5} On November 30, 2020, the trial court held a hearing on Fenter's motion to suppress. On April 22, 2021, the trial court filed a judgment entry denying Fenter's motion to suppress. On August 11, 2021, the trial court issued a supplemental judgment entry further explaining its reasoning for its denial of Fenter's motion to suppress. The trial court's additional journal entry specifically rebuffed Fenter's argument that her arrest was unlawful because the deputies entered the residence without a search warrant.

{¶6} On October 28, 2021, Fenter appeared for a change-of-plea hearing. Under a negotiated plea agreement, Fenter withdrew her plea of not guilty and entered a no contest plea to the count in the indictment. In exchange, the State agreed to recommend that Fenter be sentenced to community-control sanctions. The trial court accepted Fenter's no contest plea and found her guilty of the charge in

the indictment. The trial court filed its judgment entry of conviction on October 29, 2021.

{¶7} At the sentencing hearing held on December 6, 2021, the trial court sentenced Fenter to 33 days of local incarceration with credit for 33 days previously served and imposed community-control sanctions. The trial court filed its judgment entry of sentence on December 7, 2021.

{¶8} On January 6, 2022, Fenter filed a notice of appeal. She raises two assignments of error which we address together.

### Assignment of Error No. I

**Because the trial court incorrectly applied the legal standard in Appellant's case, the trial court erred in denying Appellant's Motion to Suppress, in violation of Appellant's right to be informed of the nature of the charge against her, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

### Assignment of Error No. II

**Because the trial court incorrectly applied the legal standard in Appellant's case, the trial court erred in denying Appellant's Motion to Suppress, in violation of Appellant's right against unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.**

{¶9} Both of Fenter's assignments of error allege that the trial court erred by denying her motion to suppress evidence. Specifically, Fenter argues that the trial court erred in two respects when it denied her motion to suppress evidence. First,

Fenter contends the execution of the arrest warrant violated the Sixth and Fourteenth Amendments because the deputies did not promptly inform her of the charges precipitating her arrest. Second, Fenter argues that the deputies engaged in a search and seizure in violation of the Fourth and Fourteenth Amendment when Sergeant McCabe pursued her into the residence to effectuate her arrest. Accordingly, she maintains that the methamphetamine confiscated inside the home should be suppressed as fruit of the poisonous tree.

{¶10} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶11} The Sixth Amendment, as applied to the states through the Fourteenth Amendment, provides, in pertinent part that, "[i]n all criminal prosecutions, the

accused shall enjoy the right * * * to be informed of the nature and cause of the accusation." Similarly, the Ohio Constitution provides that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel," and "to demand the nature and cause of the accusation against him." Ohio Constitution, Article I, Section 10.

{¶12} Specifically, Fenter argues that the execution of the arrest warrant was illegal because the deputies did not inform her of the nature of the charges against her in conformity with Crim.R. 4. In pertinent part, Crim.R. 4(D)(3) provides as follows:

> Except as provided in [Crim.R. 4(A)(2)], warrants shall be executed by the arrest of the defendant. The officer need not have the warrant in the officer's possession at the time of the arrest. In such case, the officer shall inform the defendant of the offense charged and of the fact that the warrant has been issued. A copy of the warrant shall be given to the defendant as soon as possible.

Crim.R. 4(D)(3).

{¶13} Fenter alleges that her arrest ran afoul of the Sixth Amendment because the arresting officers did not immediately inform her of the nature of the charges against her. Accordingly, Fenter alleges that the methamphetamine recovered at the scene of her arrest and which forms the basis for the underlying charge, was fruit of the poisonous tree.

{¶14} The evidence presented at the suppression hearing is largely undisputed and is corroborated by the deputies' body camera footage of the

interaction. The testimony indicates that Sergeant McCabe and Deputy Moran made contact with Fenter and Sanchez in the early hours of November 12, 2019 with the intent of executing felony arrest warrants. The deputies, who were in uniform, approached a residence in Melrose, Ohio where they had information Fenter and Sanchez were staying. The residence was the home of Fenter's father and was not listed on the arrest warrant. After deputies informed Sanchez they had a warrant for his arrest, he demanded that the deputies show him the warrant or inform him of the charges. As Sanchez was being arrested, Fenter emerged from inside the residence and demanded more information regarding the nature of the charges against Sanchez.

{¶15} Shortly thereafter, Sergeant McCabe informed Fenter that he also had a warrant for her arrest and instructed her to turn around to be handcuffed. Rather than complying, Fenter, who was standing on the porch, immediately ran into the residence through the open door and was pursued by Sergeant McCabe. As Sergeant McCabe followed Fenter through the residence, he observed her remove a small plastic baggie from her person and throw it on the floor. Later, Sergeant McCabe collected the plastic baggie which was subsequently determined to contain methamphetamine.

**{¶16}** After Fenter was arrested, Sanchez became very agitated and attempted to flee from custody. His attempt to flee resulted in physical injury to himself and to Deputy Moran.

**{¶17}** Deputy Moran's body camera footage indicates that Fenter was informed that she was being arrested due to a "pick up order on a Grand Jury Indictment" at the timestamp 2:55, within two minutes of the commencement of the arrest. Moreover, Deputy Moran informed Fenter that she was being arrested for possession of methamphetamine at timestamp 3:08. Fenter was therefore informed of the nature of the charge 15 minutes after the commencement of law enforcement contact.

**{¶18}** Accordingly, upon review of the record, we do not find that Fenter's arrest violated her right to be informed of the nature of the accusations against her pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution or ran afoul of Crim.R. 4(D)(3). Pursuant to Crim.R. 4(D)(3), an arresting officer "need not have the warrant in the officer's possession at the time of arrest." *See State v. Hicks*, 9th Dist. Summit No. 24708, 2011-Ohio-2769, ¶ 45; *State v. Brewster*, 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 20. The warrant gave the deputies authority to arrest Fenter wherever they found her. *Brewster* at ¶ 20.

**{¶19}** Moreover, although the deputies did not immediately inform Fenter of the nature of the charges against her, a review of the record indicates that the delay was due to Fenter and her co-defendant's actions, including attempting to flee and resisting arrest. Fenter and Sanchez's lack of cooperation, attempts to flee from law enforcement, and resisting arrest were responsible for the 15-minute timespan between the commencement of the law-enforcement interaction and Fenter being informed of the nature of the charges against her. Accordingly, under the circumstances created by Fenter and Sanchez, we do not find that the deputies violated Crim.R. 4(D)(3) when arresting Fenter. *See State v. White-Barnes*, 4th Dist. Ross No. 1841, 1992 WL 368844, *5 (the exigencies of a particular situation may make it, as a practical matter, impossible for an arrest warrant to be served contemporaneously with the arrest of the defendant); *State v. Campana*, 112 Ohio App.3d 297 (11th Dist.1996). Because Fenter's argument that her arrest is unconstitutional is predicated solely on the assumption that the deputies violated Crim.R. 4(D)(3), we need not further address Fenter's claim that deputies violated the Sixth Amendment of the United States Constitution or Article I, Section 14 of the Ohio Constitution while effectuating her arrest.[1]

**{¶20}** Fenter's first assignment of error is overruled.

---

[1] In her appellate brief, Fenter assumes that if deputies violated Crim.R. 4(D)(3) while executing her arrest warrant, the arrest would have necessarily violated the Sixth Amendment. Because we determined that deputies did not violate Crim.R. 4(D)(3), we need not address the validity of Fenter's assumption.

**{¶21}** Having determined that Fenter's arrest was not unconstitutional, we next turn to her argument that the deputies conducted an unconstitutional search and seizure by following her into the residence.

**{¶22}** "The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7. "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801 (1991), citing *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516 (1967) (Harlan, J., concurring). "An expectation of privacy is protected by the Fourth Amendment where (1) an individual has exhibited a subjective expectation of privacy, and (2) that expectation of privacy is one that 'society is prepared to recognize as "reasonable."'" *State v. Fielding*, 10th Dist. Franklin Nos. 13AP-654 and 13AP-655, 2014-Ohio-3105, ¶ 15, quoting *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577 (1979), quoting *Katz* at 361. "It is well settled law that, absent consent, the Fourth Amendment prohibits warrantless entry into a home to make an arrest unless there is both probable cause for the arrest and the existence of exigent circumstances." *State v. Letsche*, 4th Dist. Ross No. 02CA2693, 2003-Ohio-6942, ¶ 19, citing *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371 (1980).

{¶23} "Exigent circumstances are a well-established exception to the Fourth Amendment's warrant requirement." *State v. Byrd*, 2d Dist. Montgomery No. 27340, 2017-Ohio-6903, ¶ 13. "Whether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of the entry." *State v. Enyart*, 10th Dist. Franklin Nos. 08AP-184 and 08AP-318, 2010-Ohio-5623, ¶ 21, citing *United States v. Macdonald*, 916 F.2d 766, 769 (2d Cir.1990).

{¶24} "The exigent or emergency circumstances exception to the warrant requirement applies in a variety of situations, including when entry into a building is necessary to protect or preserve life, to prevent physical harm to persons or property, or to prevent the concealment or destruction of evidence, or when officers are in 'hot pursuit' of a fleeing suspect or someone inside poses a danger to the police officer's safety." *Byrd*, ¶ 13.

{¶25} "The Supreme Court of the United States has held that the hot pursuit of a fleeing suspect is among the recognized situations in which exigent circumstances exist." *State v. Lowe*, 11th Dist. Ashtabula No. 2014-A-0010, 2015-Ohio-1064, ¶ 29, citing *Warden v. Hayden*, 387 U.S. 294, 298-299, 87 S.Ct. 1642 (1967). In *United States v. Santana*, which was decided nearly a decade later, the defendant, was initially confronted by the police on her front porch, a public space, retreated into the residence in an effort to avoid the arrest. *U.S. v. Santana*, 427 U.S.

38, 42-43, 96 S.Ct. 2406 (1976). The United States Supreme Court held that the police, having probable cause to arrest the defendant, could not be thwarted in that effort by the defendant's retreat into her residence, a private place. In so deciding, the Supreme Court held that a defendant "may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place," including a home, notwithstanding the general prohibition against warrantless entry into a residence. *Id.* at 43.

{¶26} In the instant case the deputies had a warrant for Fenter's arrest on a felony drug-possession charge. The body camera footage of the encounter indicates that Fenter was standing on the porch, near the open doorway of a private residence, when deputies informed her there was a warrant for her arrest. Rather than complying when the deputies instructed her to turn around to be handcuffed, Fenter immediately fled into the open door of the residence in an effort to avoid arrest and divest herself of the methamphetamine she had on her person. Fenter was placed under arrest after traveling approximately 30 feet into the residence. Accordingly, deputies were in hot pursuit of Fenter when they entered the residence. "It is well established that a warrantless entry is justified under exigent circumstances where there is imminent danger that evidence will be lost or destroyed if a search is not immediately conducted." *State v. Garrett*, 2d Dist. Montgomery No. 27630, 2018-Ohio-4530, ¶ 36. Once Fenter was informed that there was a warrant for her arrest

and fled into the house, there was a realistic expectation that any delay could result in Fenter's escape, harm to the deputies, or the destruction of evidence. *See Santana* at 43; *State v. Melvin*, 2d Dist. Montgomery No. 27248, 2017-Ohio-7938, ¶ 13 (exigent circumstances exists for a warrantless entry into a residence when police officers were discovered outside the residence while preparing to execute an arrest warrant and feared evidence would be destroyed or weapons obtained).  Indeed, when Sergeant McCabe followed Fenter into the residence, he observed her remove a small plastic baggie, which was later determined to contain methamphetamine, from her person and attempt to discard it on the floor of the residence.

**{¶27}** Nevertheless, Fenter argues that the hot-pursuit exception to the warrant requirement does not apply because, according to Fenter, the police created the exigent circumstances by attempting to carry out an unlawful arrest.  Fenter contends that "by failing to inform her of the charge for which she was being arrested, the deputies created the exigency."  (Appellant's Brief at 11).  Fenter further alleges that "[h]ad the deputies properly informed [her] of [nature of] the charge for which she was being arrested, Fenter would have fully cooperated and submitted to deputies immediately, and the deputies would not have needed to pursue her through the residence." (*Id.*).  We disagree.

**{¶28}** To the extent that Fenter argues that she was justified in fleeing from the deputies because they were attempting to execute the arrest warrant in an

unlawful manner, we have effectively preempted this argument through our resolution of Fenter's first assignment of error. Furthermore, we note that Fenter's self-serving claim that she would have fully cooperated with the deputies if they had informed her of the charges against her is undermined by the record. First, Deputy McCabe's body camera footage of the incident reveals that Fenter immediately fled when he notified her they had a warrant for her arrest without requesting to be informed of the nature of the charges against her or allowing deputies an opportunity to provide her with that information. Additionally, Sergeant McCabe's observation that, during her attempted flight, Fenter removed a small plastic baggie from her person and attempted to discard it in the residence belies the claim of willing cooperation with the deputies. Fenter's actions suggest that her behavior was motivated by a desire to destroy potential evidence rather than concerns regarding the legality of her arrest. *State v. Reilly*, 3d Dist. Seneca No. 13-19-28, 2020-Ohio-850, ¶ 14.

{¶29} Fenter's second assignment of error is overruled.

{¶30} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Paulding County Court of Common Pleas.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**
**/jlr**