[Cite as *State v. Robinson*, 2025-Ohio-2216.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    30959 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARLON ROBINSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 23 02 0612 |

DECISION AND JOURNAL ENTRY

Dated: June 25, 2025

SUTTON, Judge

**{¶1}** Defendant-Appellant Marlon Robinson appeals the judgment of the Summit County Court of Common Pleas denying his motion to suppress. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

**{¶2}** Todd Liggett, a parole officer with the Ohio Adult Parole Authority assigned to the United States Marshal's Northern Ohio Violent Fugitive Task Force, had been tracking Mr. Robinson, a parole violator-at-large, for at least six months. On February 9, 2023, Officer Liggett located Mr. Robinson at a residence on Edmeyer Court in Akron, Ohio. A warrant for Mr. Robinson's arrest had been issued by the State of Ohio. In addition to being sought for parole violations, Mr. Robinson was a suspect in a rape case. On that date, Officer Liggett was staked out near the Edmeyer Court residence with other law enforcement officers and observed Mr.

Robinson exit a vehicle and enter the residence. Officers knocked on the door of the residence. The door opened, officers observed Mr. Robinson in the hallway, and they ordered him to come out. Officer Liggett knew there were possibly children in the home and, when asked if children were present, Mr. Robinson "did not give a definitive answer yes or no at that time," so officers did a security sweep of the residence to make sure no one else was in the residence. During the search of the residence, officers observed two firearms which were located in plain view on top of beds in two bedrooms. In addition, officers saw men's clothing in the home, leading them to believe Mr. Robinson was residing there.

{¶3} At that point, officers stopped the search and asked the Akron Police Department to obtain a search warrant. Officers set up a perimeter to maintain the security of the premises while they obtained the warrant.

{¶4} After the security sweep and while officers were waiting for the search warrant, K.C., the named lessee for the residence, arrived at the residence after being alerted to the officers' presence by her security camera. K.C. was not allowed into the residence while the search warrant was being obtained. Once the search warrant was obtained, Officer Liggett assisted the Akron Police with the search of the premises. Narcotics were found in a safe in the residence.

{¶5} When Mr. Robinson was arrested, drugs were found on him during the search of his person. In an interview with Mr. Robinson after his arrest and after he was *Mirandized* by police, Mr. Robinson admitted the guns found in the Edmeyer Court residence were his and anything found in the apartment that was narcotics, contraband, or illegal was his and did not belong to K.C.

{¶6} The Summit County Grand Jury indicted Mr. Robinson for multiple felonies and specifications, including drug possession and trafficking offenses and having weapons under disability.

{¶7} Mr. Robinson filed a motion to suppress, seeking the suppression of all evidence seized. The trial court held a suppression hearing over the course of two non-consecutive days. At the hearing, K.C. denied Mr. Robinson resided in the Edmeyer Court premises, but stated he comes over to help with the children and do laundry.

{¶8} The trial court denied the motion to suppress, stating: (1) a warrantless search of a parolee's property does not violate the Fourth Amendment and therefore the initial intrusion was lawful; (2) the weapons discovered during the initial search were found in plain view, were inadvertently discovered, and their incriminating nature was immediately apparent as Mr. Robinson was a parolee and not allowed to possess firearms; and (3) the firearms served as probable cause for the search warrant later obtained.

{¶9} Mr. Robinson pleaded no contest to the charges in the indictment and was sentenced to a total aggregate term of 4 to 6 years in prison.

{¶10} Mr. Robinson appeals, raising one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN DENYING [MR. ROBINSON'S] MOTION TO SUPPRESS.**

{¶11} Mr. Robinson argues in his sole assignment of error the trial court erred in denying his motion to suppress. For the following reasons, this Court disagrees.

{¶12} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes

the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.,* citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997). Accordingly, this Court grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth,* 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶13} The trial court found the following relevant facts: (1) Mr. Robinson was a parole violator-at-large and all parolees are informed they are subject to warrantless searches of their residences, houses, or anything they have the ability to control; (2) while under surveillance by Officer Liggett, Mr. Robinson was observed coming and going from the Edmeyer Court apartment; (3) on the day of the search, Mr. Robinson was located inside the Edmeyer Court residence; (4) officers asked Mr. Robinson to step outside, which he did; (5) when asked if children were present in the apartment, Mr. Robinson did not clearly respond; (6) during a search of the apartment, firearms were observed in plain view, one on top of a bed; and (7) K.C. said Mr. Robinson did not reside at the Edmeyer Court residence, although he helps her watch the children, washes his clothes there, and helps her pay her bills. These facts are supported by competent, credible evidence in the record. This Court will now apply these facts to the applicable law.

{¶14} On appeal, Mr. Robinson argues the warrantless "security sweep" of the Edmeyer Court residence violated the Fourth Amendment to the United States Constitution and Article I,

Section 14 of the Ohio Constitution; and the incriminating nature of the guns located in plain view during the security sweep was not "immediately apparent" to law enforcement because there was no indication the firearms belonged to Mr. Robinson.

{¶15} Mr. Robinson also argues for the first time on appeal that the parole search of the Edmeyer Court residence was a "stalking horse" search conducted for law enforcement purposes and was not related to Mr. Robinson's parole violations.

{¶16} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment and Article I, Section 14 of the Ohio Constitution, prohibits unreasonable searches and seizures. "Subject to specific exceptions, which the State has the burden of establishing, warrantless searches are unreasonable per se under the Fourth Amendment." *State v. Atkinson*, 2020-Ohio-3522, ¶ 13 (9th Dist.), citing *State v. Roberts*, 2006-Ohio-3665, ¶ 98. A warrantless entry by police into a private home is presumptively unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions. *State v. Pinson*, 2005-Ohio-4532, ¶ 17 (2d Dist.), citing *Payton v. New York*, 445 U.S. 573 (1980), and *Katz v. United States*, 389 U.S. 347 (1967). One such exception is a parole search.

## Parole Search

{¶17} Mr. Robinson was on parole and therefore subject to warrantless searches of his person and residence. *See, e.g.,* R.C. 2967.131(C), *State v. Emch*, 2002-Ohio-3861, ¶ 20 (9th Dist.). R.C. 2967.131(C) provides in relevant part:

> (1) During the period of a conditional pardon or parole, of transitional control, or of another form of authorized release from confinement in a state correctional institution that is granted to an individual and that involves the placement of the individual under the supervision of the adult parole authority, and during a period of post-release control of a felon imposed under section 2967.28 of the Revised Code, authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or

felon, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the individual or felon has a right, title, or interest or for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, if any of the following apply:

(a) The field officers have reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's conditional pardon, parole, transitional control, other form of authorized release, or post-release control.

**{¶18}** R.C. 2967.131(C)(1) therefore allows the Adult Parole Authority to conduct a warrantless search of the parolee's residence or other real property for which the parolee has "the express or implied permission" of the legal occupant "to use, occupy or possess," if the field officers have reasonable grounds to believe the parolee is not abiding by the law, or otherwise not complying with the terms and conditions of the parolee's post-release control. In other words, if Mr. Robinson had K.C.'s permission to be in the residence, and Officer Liggett had reasonable grounds to believe Mr. Robinson had violated the law *or* the terms and conditions of his parole, the residence was subject to a warrantless search.

**{¶19}** K.C. testified at the suppression hearing she knew Mr. Robinson was in her apartment on February 9, 2023, and he came over to help with the children. His clothing was there because they did laundry together. Officer Liggett testified Mr. Robinson was a parole violator-at-large and a suspect in a rape case. Whether Mr. Robinson resided at the apartment or had K.C.'s permission to be there, because Officer Liggett had reasonable grounds to believe Mr. Robinson had violated the terms of his parole, the warrantless search of the residence was authorized by R.C. 2967.131(C)(1). In addition, Mr. Robinson was a suspect in a criminal case, which is a separate ground for a warrantless search pursuant to R.C. 2967.131(C)(1).

**{¶20}** Mr. Robinson also argues a search of the residence was not authorized or necessary once he came out of the residence. However, the plain language of R.C. 2967.131(C)(1) states the

parole officer "may search, with or without a warrant, . . . the place of residence of the individual or felon . . . or other real property . . . for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess" and does not state the parolee must be in the searched premises at the time of the search. Mr. Robinson has not pointed to any authority to the contrary. In addition, in this case, Officer Liggett testified Mr. Robinson did not clearly answer whether or not children were in the apartment. "The dangers posed by leaving a child alone in an apartment are considerable and potentially serious." *State v. Arbino*, 83 Ohio Misc. 2d 12, 15 (Mun. 1996). "The exigent or emergency circumstances exception to the warrant requirement applies in a variety of situations, including when entry into a building is necessary to protect or preserve life[.]" *State v. Fenter*, 2022-Ohio-3279, ¶ 24 (3d Dist.), quoting *State v. Byrd*, 2017-Ohio-6903, ¶ 13 (2d Dist.).

{¶21} Based on the foregoing, this Court concludes the warrantless search of the Edmeyer Court residence, including the bedrooms where the guns were located, was lawful.

### The Guns in Plain View

{¶22} During the sweep of the apartment, guns were found in plain view. "Under [the plain view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was 'immediately apparent' that the item was incriminating." *State v. Waddy*, 63 Ohio St.3d 424, 442 (1992). "The discovery need not be inadvertent." *State v. Littell*, 2014-Ohio-4654, ¶ 10 (9th Dist.), quoting *Waddy* at 442, fn. 5. The officer must, however, "be lawfully located in a place from which the object can be plainly seen" and have "a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 137 (1990). "The 'immediately apparent' requirement of the 'plain view' doctrine is satisfied when

[officers] have probable cause to associate an object with criminal activity." *State v. Halczyszak*, 25 Ohio St.3d 301 (1986), paragraph three of the syllabus.

**{¶23}** Mr. Robinson argues because another person resided at the Edmeyer Court residence, police did not have probable cause to believe the guns were associated with criminal activity. R.C. 2923.13 prohibits having a weapon under disability. Pursuant to R.C. 2923.13, as a parolee and a fugitive from justice, Mr. Robinson was not allowed to have guns. Officers were not required to have probable cause that Mr. Robinson *owned* the guns for them to have probable cause that he *had* the guns. "In order for an individual to 'have' a firearm within the meaning of R.C. 2923.13, he must actually or constructively possess it." *State v. Najeway*, 2003-Ohio-3154, ¶ 10, (9th Dist.), citing *State v. Martinsons,* 1998 WL 318526, * 3 (9th Dist. June 17, 1998). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Messer*, 107 Ohio App.3d 51, 56, (9th Dist. 1995), quoting *State v. Wolery*, 46 Ohio St.2d, 316, 329 (1976). Access to the weapon can establish that one "had" the weapon and ownership is not required. *Najeway* at ¶10. Circumstantial evidence can be used to support a finding of constructive possession. *Id.*

**{¶24}** The trial court found "the requirement that the incriminating nature of the evidence was 'immediately apparent'" was satisfied. Upon review, this Court agrees. Mr. Robinson was in the Edmeyer Court residence immediately prior to the search. Officers were lawfully in the residence, including in the bedrooms where the guns were found on the beds in plain view, and their incriminating nature was immediately apparent because it was a crime for Mr. Robinson to have guns.

**{¶25}** The lawfully discovered guns were among the evidence used to establish probable cause for the search warrant of the premises. The narcotics were discovered and seized pursuant to that search warrant. Therefore, the trial court did not err in denying Mr. Robinson's motion to suppress.

**Stalking Horse**

**{¶26}** Mr. Robinson also argues that Officer Liggett, a parole officer, was not acting as a parole officer on February 9, 2023, but rather "as a 'stalking horse' to advance a rape investigation." Mr. Robinson did not raise this issue as grounds for suppression in the trial court nor did he present any evidence that the parole search was a pretextual search. He therefore forfeits the issue subject only to a plain error analysis. *State v. Rogers*, 2015-Ohio-2459, ¶ 3. However, Mr. Robinson does not make a "plain error" argument here and "[t]his Court will not sua sponte undertake a plain-error analysis if the defendant fails to do so." *State v. Wheelock*, 2024-Ohio-1913, ¶ 14 (9th Dist.).

III.

**{¶27}** For the forgoing reasons, Mr. Robinson's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JACOB T. WILL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.